United States District Court
Southern District of Texas

**ENTERED**

May 29, 2019

David J. Bradley, Clerk

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

|  |  |  |
|---|---|---|
| ROBERT HACK, derivatively on behalf of CONN'S, INC., | § § § § | |
| *Plaintiff,* | § | |
| v. | § § | |
| THEODORE M. WRIGHT, BOB L. MARTIN, JON E.M. JACOBY, KELLY M. MALSON, DOUGLAS H. MARTIN, DAVID SCHOFMAN, SCOTT L. THOMPSON, BRIAN TAYLOR, and MICHAEL J. POPPE, | § § § § § § § | No. 4:14-CV-3442 |
| *Defendants,* | § § | |
| - and - | § § | |
| CONN'S, INC., | § § | |
| *Nominal Defendant.* | § | |

## REPORT AND RECOMMENDATION
## ON DEFENDANTS' MOTION TO DISMISS

Plaintiff Robert Hack ("Plaintiff") filed this shareholder derivative action against Defendants Theodore Wright, Bob Martin, Jon Jacoby, Kelly Malson, Douglas Martin, David Schofman, Scott Thompson, Brian Taylor, and Michael Poppe (collectively "Defendants"), as well as against Conn's, Inc. as a nominal

Defendant ("Conn's" or "Corporation").[1] Compl., ECF No. 1. Before the Court is Defendants' motion to dismiss for failure to plead demand futility under Rule 23.1 and failure to state a claim under Rule 12(b)(6).[2] ECF No. 29. Having considered the record and authorities, the Court recommends that Defendants' motion should be granted without prejudice and Plaintiff should be granted leave to amend.

## I.
## BACKGROUND

### A. The Parties.

Plaintiff—a shareholder of Conn's—filed this derivative action on behalf of Conn's. ECF No. 1 at ¶¶ 1, 16. This case shares a common factual background with the securities class action against Conn's, which sells household appliances in retail stores across the country and also has a credit arm of its business, providing in-house credit options, third-party financing programs, and third-party rent-to-own payment plans to its customers. *Id*. at ¶¶ 29, 55; *see In re Conn's, Inc. Sec. Litig.*, No. 14-CV-548 (S.D. Tex.). Beginning in February 2014, Conn's made public announcements that its fourth quarter fiscal year 2014 bad debts in its credit segment exceeded its previously issued full-year fiscal 2014 guidance and it expected earnings per share dilution in the fourth quarter in 2014 and in 2015. ECF No. 1 at ¶¶ 118-23. Plaintiff

---

[1] On March 29, 2019, the District Judge referred this motion for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B), ECF No. 35.

[2] Plaintiff filed an opposition, ECF No. 30, and Defendants filed a reply, ECF No. 31.

alleges in his complaint that the Individual Defendants engaged in wrongdoing between April 3, 2013 through the date the complaint was filed, on December 1, 2014 (the "Relevant Period"). *Id.* at ¶ 1.

Plaintiff brings this claim against seven members of the Corporation's eight-member Board of Directors ("Board")—Theodore Wright,[3] Douglas Martin, Bob Martin, Jon Jacoby, Kelly Malson, David Schofman, and Scott Thompson.[4] Plaintiff also brings this suit against two executive officers who are not on the Board—Brian Taylor, the Corporation's Chief Financial Officer ("CFO"), and Michael Poppe, the Corporation's Chief Operating Officer ("COO"). *Id.* at ¶¶ 1, 6, 17-28. The complaint alleges they each held these positions during the Relevant Period.[5] *Id.* at ¶¶ 17-28.

**B. Plaintiff's Complaint.**

In his 89-page complaint, Plaintiff alleges that, during the Relevant Period, "all members of the Board knew that Conn's lowered its underwriting standards and offered credit lines to customers who lacked creditworthiness, as a strategy to generate revenue." *Id.* at ¶ 2; *see also id.* at ¶¶ 7, 60-65. Plaintiff alleges this led to financial problems, of which the Defendants were aware. *Id.* at ¶¶ 2, 71, 83. Plaintiff

---

[3] Mr. Wright is the only inside Director, serving as the Chair of the Board and also as the Corporation's Chief Executive Officer ("CEO"). ECF No. 1 at ¶ 17.

[4] The Board's eighth Director, William Saunders, is not named as a Defendant in this suit. ECF No. 1 at ¶ 6.

[5] Defendants allege that Mr. Wright, Mr. Jacoby, and Mr. Thompson are no longer members of the Board. ECF No. 29 at 12 n.5.

alleges that the Board of Directors knowingly approved false and misleading public statements (including press releases, annual and quarterly reports, statements during conference calls and conferences, and statements to analysts) that misrepresented the underwriting policy changes, overstated the financial condition of the Corporation, and falsely attributed financial problems to reasons other than the lower underwriting standards, thereby violating their fiduciary duties and federal securities laws. *Id*. at ¶¶ 2, 7, 48, 50, 53, 58-123.

Plaintiff also alleges that the false and misleading information presented to the public artificially inflated Conn's stock prices during the Relevant Period. *Id*. at ¶¶ 3, 66, 81, 114. Plaintiff alleges that five of the Individual Defendants—Mr. Wright, Mr. Jacoby, Mr. D. Martin, Mr. Thompson, and Mr. Poppe—sold over 1.3 million Conn's shares for over $66 million on the basis of material non-public information about Conn's true financial condition. *Id*. at ¶¶ 4, 124-126. Plaintiff brings claims for breach of fiduciary duty, unjust enrichment, gross mismanagement, and insider trading. *Id.* at ¶¶ 168-190.

### C. Defendants' Motion To Dismiss.

Defendants seek to dismiss Plaintiff's complaint on two grounds: (1) Plaintiff failed to adequately plead that demanding the Board to bring this suit would be futile under Federal Rule of Civil Procedure 23.1, and (2) Plaintiff failed to state a claim on which relief can be granted under Federal Rule of Civil Procedure 12(b)(6) for

each of his four claims. ECF No. 29 at 6. Plaintiff concedes he did not demand the Board to bring this action but contends demand would be futile because the seven Director Defendants are interested, lack independence, and would face a substantial likelihood of personal liability. ECF No. 30 at 11.

## II.
## RULE 23.1

### A. Legal Standard For Demand Futility Under Rule 23.1.

Federal Rule of Civil Procedure 23.1 requires a shareholder derivative complaint to state with particularity "(A) any effort by the plaintiff to obtain the desired action from the directors or comparable authority and, if necessary, from the shareholders or members; and (B) the reasons for not obtaining the action or not making the effort." FED. R. CIV. P. 23.1(b)(3). Because Rule 23.1 does not identify substantive standards, "the particularity of a plaintiff's pleadings is governed by the standards of the state of incorporation." *Freuler v. Parker*, 803 F. Supp. 2d 630, 636 (S.D. Tex. 2011), *aff'd*, 517 F. App'x 227 (5th Cir. 2013) (applying Delaware law). The parties agree that since Conn's is incorporated in Delaware, Delaware law applies. ECF No. 29 at 8; ECF No. 30 at 12.

"When a corporation suffers harm, the board of directors is the institutional actor legally empowered under Delaware law to determine what, if any, remedial action the corporation should take, including pursuing litigation against the individuals involved." *Van der Gracht de Rommerswael on Behalf of Rent-A-Center,*

5

*Inc. v. Speese*, No. 4:17-CV-227, 2017 WL 9280071, at *6 (E.D. Tex. Aug. 11, 2017) (quoting *In re China Agritech, Inc. S'holder Deriv. Litig.*, No. 7163-VCL, 2013 WL 2181514, at *13 (Del. Ch. May 21, 2013)) (applying Delaware law), *report and recommendation adopted*, 2017 WL 4545929 (E.D. Tex. Oct. 12, 2017). "Under Delaware law, directors are entitled to the presumption that they were faithful to their fiduciary duties." *Freuler*, 803 F. Supp. 2d at 637 (quoting *Beam ex rel. Martha Stewart Living Omnimedia, Inc. v. Stewart*, 845 A.2d 1040, 1048 (Del. 2004)).

"In a stockholder derivative suit, a stockholder pursues a cause of action that belongs to the corporation." *Id*. at 636 (citing *Aronson v. Lewis*, 473 A.2d 805, 811 (Del. 1984)). "A stockholder may not pursue a derivative suit to assert a claim of the corporation unless the stockholder: (a) has first demanded that the directors pursue the corporate claim and the directors have wrongfully refused to do so; or (b) establishes that pre-suit demand is excused because the directors are deemed incapable of making an impartial decision regarding the pursuit of litigation." *Van der Gracht*, 2017 WL 9280071, at *7 (quoting *Wood v. Baum*, 953 A.2d 136, 140 (Del. 2008)). "Where, as here, a plaintiff does not make a pre-suit demand on the board of directors, the complaint must plead 'with particularity facts showing that a demand on the board would have been futile'" in order to overcome the business judgment presumption. *Id*. (quoting *In re Citigroup, Inc. S'holder Deriv. Litig.*, 964 A.2d 106, 121 (Del. Ch. 2009)).

Under Delaware law, just as under its federal counterparts, the standard for pleading demand futility is more stringent than on a 12(b)(6) motion to dismiss for failure to state a claim. *See Grobow v. Perot*, 526 A.2d 914, 920 (Del. Ch. 1987), *aff'd*, 539 A.2d 180 (Del. 1988). The plaintiff must plead "particularized factual statements that are essential to the claim…." *Freuler*, 803 F. Supp. 2d at 638 (quoting *Brehm v. Eisner*, 746 A.2d 244, 254 (Del. 2000)). However, he "need not plead evidence." *Van der Gracht*, 2017 WL 9280071, at *7 (quoting *Aronson*, 473 A.2d at 816). "[T]he plaintiff is entitled to all 'reasonable inferences [that] logically flow from particularized facts….'" *Id.* (quoting *Beam*, 845 A.2d at 1048).

"Plaintiffs must show that a majority—or in a case where there are an even number of directors, exactly half—of the board was incapable of considering demand." *In re INFOUSA, Inc. S'holder Litig.*, 953 A.2d 963, 989-90 (Del. Ch. 2007) (citation omitted). "[D]emand futility must be determined on a claim-by-claim basis." *Taylor v. Kissner*, 893 F. Supp. 2d 659, 666 (D. Del. 2012) (citing *MCG Capital Corp. v. Maginn*, No. 4521-CC, 2010 WL 1782271, at *18 (Del. Ch. 2010)) (applying Delaware law).

### 1. The *Aronson* test.

"The Delaware Supreme Court has established two similar, but not identical, tests for determining whether the allegations of a complaint sufficiently plead demand futility." *Van der Gracht*, 2017 WL 9280071, at *14 (citing *Wood*, 953 A.2d

at 140). The *Aronson* test applies when a plaintiff challenges a board decision or transaction. To determine demand futility under *Aronson*, the court "must decide whether, under the particularized facts alleged, a reasonable doubt is created that: (1) the directors are disinterested and independent[6] [or] (2) the challenged transaction was otherwise the product of a valid exercise of business judgment." *Goldfarb*, 2012 WL 13028298, at \*2 (quoting *Aronson*, 473 A.2d at 814). The prongs are disjunctive, so "if either prong is satisfied, demand is excused." *Freuler,* 803 F. Supp. 2d at 637 (quoting *Brehm*, 746 A.2d at 256).

### 2. The *Rales* test.

Where the plaintiff does not challenge a decision of the Board, courts apply the *Rales* test to determine demand futility. *Goldfarb*, 2012 WL 13028298, at \*3 (quoting *Rales*, 634 A.2d at 933-34). Under the *Rales* test, "a court must determine whether or not the particularized factual allegations of a derivative stockholder complaint create a reasonable doubt that, as of the time the complaint is filed, the board of directors could have properly exercised its independent and disinterested business judgment in responding to a demand." *Id*. at \*4 (quoting *Rales*, 634 A.2d

---

[6] "Directorial interest exists whenever divided loyalties are present, or a director either has received, or is entitled to receive, a personal financial benefit from the challenged transaction which is not equally shared by the shareholders." *Goldfarb on behalf of Pain Therapeutics, Inc. v. Barbier*, No. 11-CA-1102, 2012 WL 13028298, at \*6 (W.D. Tex. Apr. 26, 2012) (quoting *Pogostin v. Rice*, 480 A.2d 619, 624 (Del. 1984)) (applying Delaware law). "Independence means that a director's decision is based on the corporate merits of the subject before the board rather than extraneous considerations or influences." *Id*. (quoting *Aronson*, 473 A.2d at 816).

at 934). This essentially eliminates the second prong of the *Aronson* test. *Freuler*, 803 F. Supp. 2d at 638 (quoting *Rales,* 634 A.2d at 933).

A plaintiff can satisfy the *Rales* test "by showing that the directors would face a 'substantial likelihood' of personal liability by complying with a shareholder's demand to pursue litigation." *Taylor*, 893 F. Supp. 2d at 666 (citing *Rales*, 634 A.2d at 936). "[D]efendant directors who face a substantial likelihood of personal liability are deemed interested in the transaction and thus cannot make an impartial decision." *In re Goldman Sachs Group, Inc. S'holder Litig.*, No. 5215-VCG, 2011 WL 4826104, at *18 (Del. Ch. Oct. 12, 2011). "[T]he likelihood of liability must be substantial—a 'mere threat' is insufficient." *In re Gen. Mot. Co. Deriv. Litig.*, No. 9627-VCG, 2015 WL 3958724, at *13 (Del. Ch. June 26, 2015), *aff'd*, 133 A.3d 971 (Del. 2016).

### 3. *Caremark* claims.

Cases in which the plaintiff complains of Board inaction or a violation of the Board's oversight duties are analyzed under the *Rales* test because the plaintiff does not challenge a conscious board decision. *In re Goldman Sachs*, 2011 WL 4826104, at *6, 18. These are commonly referred to as *Caremark* claims. *Id*. at *18; *see In re Caremark Int'l Inc. Deriv. Litig.*, 698 A.2d 959 (Del. Ch. 1996). "A *Caremark* claim has been recognized as 'possibly the most difficult theory in corporation law on which a plaintiff might hope to win a judgment.'" *In re Gen. Mot.*, 2015 WL

3958724, at *16 (quoting *Caremark*, 698 A.2d at 967).

"[T]he standard for director oversight liability under *Caremark* is that: '(a) the directors utterly failed to implement any reporting or information system or controls; or (b) having implemented such a system or controls, consciously failed to monitor or oversee its operations, thus disabling themselves from being informed of risks or problems requiring their attention. The second basis for liability—a conscious failure to monitor—has been held to require pleading with particularity that there were so-called 'red flags' that put the directors on notice of problems with their systems, but which were consciously disregarded.'" *In re Gen. Mot.*, 2015 WL 3958724, at *16 (citations omitted).

### 4. The Parties disagree which standard applies.

The Parties disagree about which standard applies. Plaintiff alleges, as an initial matter, that he challenges a conscious decision of the Board, so *Aronson* applies. ECF No. 30 at 12. Plaintiff also alleges demand is excused under both *Rales* and the first prong of *Aronson* because the Directors face a substantial likelihood of personal liability *and* are interested or lack independence. *Id*. at 11, 13-24. On the other hand, Defendants contend that Plaintiff pled a *Caremark* claim, and must show the Defendants face a substantial likelihood of personal liability. ECF No. 29 at 16.

Plaintiff argues that he is not bringing a *Caremark* claim because the

10

complaint alleges that the Directors *consciously* engaged in misconduct.[7] ECF No. 30 at 25-26. However, some of the allegations in the complaint do appear to allege a *Caremark* claim based on the lack of oversight, implicating a heightened standard under *Rales*. For example, specifically with regard to the Audit Committee members, Plaintiff alleges that the Audit Committee had "oversight responsibilit[ies][,]" "either failed to conduct the requisite reviews or conduct a cursory, defective review[,]" "failed to implement adequate internal controls over the Company's financial reporting[,]" and "failed to properly oversee Conn's business[.]" ECF No. 1 at ¶¶ 43, 144, 146, 172.

The Court finds the particular test is not determinative in this case because Plaintiff's arguments for demand futility implicate both *Rales* and the first prong of *Aronson*, which many courts have recognized target the same core inquiry.[8]

---

[7] *See, e.g.*, *Abbott Labs. Deriv. S'holders Litig.*, 325 F.3d 795, 805-06 (7th Cir. 2003) (applying Delaware law) (distinguishing plaintiffs' claims alleging the that directors knowingly breached their fiduciary duties from *Caremark* claims where directors are charged with "'unconsidered' failure to act" or conduct "predicated upon ignorance of liability creating activities"); *accord In re Pfizer Inc. S'holder Deriv. Litig.*, 722 F. Supp. 2d 453, 459-60 (S.D.N.Y. 2010) (applying Delaware law) (same).

[8] *See, e.g.*, *In re Yahoo! Inc. S'holder Deriv. Litig.*, 153 F. Supp. 3d 1107, 1119 (N.D. Cal. 2015) (applying Delaware law) ("The *Rales* test simply requires the plaintiff to offer particularized allegations to create a reasonable doubt as to the first prong of the *Aronson* test….") (citing *Rales*, 634 A.2d at 934); *Ellis v. Gonzalez*, No. 2017-342-SG, 2018 WL 3360816, at *5-6 (Del. Ch. July 10, 2018) ("The tests articulated in *Aronson* and *Rales* are 'complementary versions of the same inquiry.' … [U]nder either *Aronson* or *Rales*, the question here is the same: Does the Complaint adequately allege that a majority of [the corporation's] board face[] a substantial likelihood of liability for breaching the duty of loyalty?"), *aff'd*, No. 412, 2019 WL 654609 (Del. Feb. 18, 2019); *Park Employees' and Retirement Board Employees' Annuity & Benefit Fund of Chicago v. Smith*, No. 11000-VCG, 2017 WL 1382597, at *5 (Del. Ch. Apr. 18, 2017) ("The analysis in both *Rales* and *Aronson* drive at the same point; they seek to assess whether the individual directors of the

Plaintiff's allegations in the complaint also implicate both tests. Resolving all factual

inferences in favor of the Plaintiff, the allegations that the Board approved false and

misleading statements can be construed as Board decisions, implicating *Aronson*.

*See, e.g.*, *In re Goldman Sachs*, 2011 WL 4826104, at *7 (applying *Aronson* to

board's approval of compensation scheme); *In re Cendant Corp. Deriv. Action

Litig.*, 189 F.R.D. 117, 129 (D.N.J. 1999) (applying Delaware law) (applying

*Aronson* to board's dissemination of false and misleading statements).[9] On the other

hand, Plaintiff's insider trading allegations implicate *Rales* because they do not

challenge a Board decision. Furthermore, the Court determines that Plaintiff failed

---

board are capable of exercising their business judgment on behalf of the corporation."); *Guttman
v. Huang*, 823 A.2d 492, 500-01 (Del. Ch. 2003) ("[T]he differences between the *Rales* and the
*Aronson* tests in the circumstances of this case are only subtly different, because the policy
justification for each test points the court toward a similar analysis. … [The *Rales*] inquiry makes
germane all of the concerns relevant to both the first and second prongs of *Aronson*."); *see also
Strong v. Taylor*, 877 F. Supp. 2d 433, 444 (E.D. La. 2012) (applying Delaware law) (analyzing
demand futility under both *Rales* and the first prong of *Aronson* collectively); *Khanna v. McMinn*,
No. 20545, 2006 WL 1388744, at *12 (Del. Ch. May 9, 2006) (same). The difference between the
tests is particularly less relevant where, as here, Plaintiff makes no allegation that he satisfies the
second prong of *Aronson*.

[9] *But see also In re Rocket Fuel Inc. Deriv. Litig.*, No. 15-CV-4625, 2016 WL 4492582, at *4-5
(N.D. Cal. Aug. 26, 2016) (applying Delaware law) (applying *Rales* test to board's issuance of
misleading statements where parties agreed that *Rales* applied); *In re Hecla Min. Co. Deriv.
S'holder Litig.*, Nos. 2:12-CV-97, 2:12-CV-98, 2:12-CV-119, 2014 WL 689036, at *15 (D. Id.
Feb. 20, 2014) (applying Delaware law) (applying *Rales* to board's dissemination of misleading
statements, but noting the inherent overlap between the two tests); *Jones ex rel. CSK Auto Corp.
v. Jenkins*, 503 F. Supp. 2d 1325, 1332, 1334-35 (D. Ariz. 2007) (applying Delaware law) (citing
*Rales* for demand futility standard as to board's dissemination of false and misleading statements
but analyzing whether directors were interested or lacked independence).

to plead demand futility under either *Rales* or the first prong of *Aronson*.[10] Assuming that Plaintiff is required to meet the heightened pleading standard for a *Caremark* claim, Plaintiff failed to meet this standard as well.

### 5. Conn's certificate of incorporation contains an exculpatory clause.

Plaintiff's pleading burden in this case is further heightened, and the Directors' likelihood of personal liability is lessened, by the fact that Conn's certificate of incorporation exculpates the Directors from liability to the extent authorized by 8 Del. Code § 102(b)(7). *Taylor,* 893 F. Supp. 2d at 669; *Van der Gracht*, 2017 WL 9280071, at *16. Conn's certificate of incorporation states:

> No director of the Corporation shall be liable to the Corporation or any of its stockholders for monetary damages for breach of fiduciary duty as a director, provided, however that this Article EIGHT does not eliminate the liability of the director (i) for any breach of the director's duty of loyalty to the Corporation or its stockholders; (ii) for acts or omissions not in good faith or which involve intentional misconduct or a knowing violation of law; … or (iv) for any transaction from which the director derived an improper personal benefit.

Ex. 4 at 4-5 (Article Eight), ECF No. 29-5.

Where a corporation's certificate of incorporation includes an exculpatory provision, "a serious threat of liability may only be found to exist if the plaintiff pleads a non-exculpated claim against the directors based on particularized facts."

---

[10] *See, e.g.*, *In re Rocket Fuel*, 2016 WL 4492582, at *6 (finding that which test applies is irrelevant because the plaintiff's demand futility allegations are insufficient under either test); *accord Goldfarb*, 2012 WL 13028298, at *5 (same).

*In re Gen. Mot.*, 2015 WL 3958724, at *13 (quoting *DiRienzo v. Lichtenstein*, No. 7094-VCP, 2013 WL 5503034, at *28 (Del. Ch. Sept. 30, 2013)). "[W]here directors are exculpated, 'a plaintiff must also plead particularized facts that demonstrate that the directors acted with scienter, i.e., that they had 'actual or constructive knowledge' that their conduct was legally improper." *Van der Gracht*, 2017 WL 9280071, at *17 (quoting *In re Citigroup*, 964 A.2d at 125). Other than disputing that the Court should consider Defendants' attachments,[11] the Plaintiff does not dispute the existence or authenticity of the certificate of incorporation, or that its exculpatory clause implicates a heightened pleading standard.

### B. Demand Is Not Excused For Plaintiff's Breach Of Fiduciary Duty Claim.

Plaintiff alleges that demand would be futile as to seven of the eight Directors regarding his claim for breach of fiduciary duty based on allegations that the

---

[11] Defendants attached the certificate of incorporation and three other documents to their motion to dismiss. *See* Ex. 1-4, ECF Nos. 29-1, 29-2, 29-3, 29-4, 29-5. Plaintiff objects to Defendants' attachment of these exhibits. ECF No. 30 at 26 n.12. While the court must ordinarily limit its review on a motion to dismiss to the complaint, "[t]he Court may consider 'public disclosure documents required by law to be, and that have been, filed with the SEC … without, pursuant to Rule 12(b), converting the motion into one for summary judgment.'" *Town of Davie Police Pension Plan v. Pier 1 Imports, Inc.*, 325 F. Supp. 3d 728, 747 n.4 (N.D. Tex. 2018) (quoting *Fin. Acquisition Partners v. Blackwell*, 440 F.3d 278, 286 (5th Cir. 2006)). "The court may take judicial notice of the certificate in deciding a motion to dismiss." *Van der Gracht*, 2017 WL 9280071, at *16 (quoting *In re Baxter Int'l Inc. S'holders Deriv. Litig.*, 654 A.2d 1268, 1270 (Del. Ch. 1995)) (taking judicial notice of certificate of incorporation on motion to dismiss for demand futility analysis under Rule 23.1); *accord Jones*, 503 F. Supp. 2d at 1340, n.6 (same); *Knox v. Rosenberg*, No. H-99-123, 1999 WL 35233291, at *6-7 (S.D. Tex. Sept. 28, 1999) (same). The Court declines to rely on Defendants' other three attachments, as they are not critical to resolving the motion and Defendants only rely on them to establish background facts.

Directors knowingly issued false and misleading statements about the Corporation's financial condition.[12]

### 1. Theodore Wright.

Plaintiff alleges that Mr. Wright is interested and lacks independence because (1) according to Conn's own April 15, 2014 proxy statement, Mr. Wright is not independent under NASDAQ rules; and (2) as CEO, his livelihood depends on his continued employment with Conn's and his substantial compensation. ECF No. 1 at ¶¶ 136-37. Plaintiff also alleges that Mr. Wright faces a substantial likelihood of liability for (1) approving false and misleading statements and (2) insider trading during the Relevant Period. *Id*. at ¶¶ 138-39.

Defendants concede that Mr. Wright is not listed as independent on its proxy statement under NASDAQ rules. ECF No. 29 at 12. Drawing all factual inferences in favor of the Plaintiff, the Court determines that Mr. Wright is interested or lacks independence. If Conn's does not find him independent under NASDAQ requirements, the Court cannot assume he is independent for the demand inquiry here. "[T]o have a derivative suit dismissed on demand excusal grounds because of

---

[12] Some of Plaintiff's demand futility arguments could also apply to Plaintiff's claim for breach of fiduciary duty based on allegations of insider trading, to the extent this violates the Directors' fiduciary duties. *See In re China Automotive Sys. Inc. Deriv. Litig.*, No. 7145-VCN, 2013 WL 4672059, at *10 (Del. Ch. Aug. 30, 2013) (recognizing insider trading as a breach of fiduciary duty) (citing *Brophy v. Cities Serv. Co.*, 70 A.2d 5, 7-8 (Del. Ch. 1949)). For clarity, and because demand futility must be alleged on a "claim-by-claim basis," *Taylor*, 893 F. Supp. 2d at 666, the Court discusses those demand futility allegations that pertain specifically to Plaintiff's insider trading claim separately. *See infra* Section II.D.

the presumptive independence of directors whose own colleagues will not accord them the appellation of independence creates cognitive dissonance that our jurisprudence should not ignore." *Sandys v. Pincus*, 152 A.3d 124, 131 (Del. 2016) (finding directors not independent for purposes of the demand futility analysis where their own company did not list them as independent in its public disclosures under NASDAQ listing rules).

While Mr. Wright lacks independence under Plaintiff's first argument, Plaintiff's other arguments have been repeatedly rejected by courts. Regarding Plaintiff's argument that Mr. Wright is interested because of his position as CEO, "[d]emand futility cannot be pleaded merely on the basis of allegations that inside directors would act to preserve their employment positions. If this were the case, every inside director would be disabled from considering a pre-suit demand." *Guitierrez v. Logan*, No. H-02-1812, 2005 WL 2121554, at *11 (S.D. Tex. Aug. 31, 2005) (internal citations omitted) (applying Delaware law). As to Plaintiff's two other arguments that Mr. Wright faces a substantial likelihood of liability for making false and misleading statements and insider trading, these arguments fail to establish demand futility as discussed *infra* with regard to the other Directors.[13]

---

[13] Plaintiff also alleges in his brief that Mr. Wright faces a substantial likelihood of liability because he was a named Defendant in a related securities class action. ECF No. 30 at 14 (citing *In re Conn's*, No. 14-CV-548 (S.D. Tex. May 5, 2016), ECF No. 125). However, Plaintiff did not discuss this in his complaint and "it is axiomatic that a complaint cannot be amended by briefs in opposition to a motion to dismiss." *In re Enron Corp. Sec., Deriv., & ERISA Litig.*, 761 F. Supp. 2d 504, 566 (S.D. Tex. 2011) (citing *In re Baker Hughes Sec. Litig.*, 136 F. Supp. 2d 630, 646

### 2. Douglas Martin.

Plaintiff alleges Mr. D. Martin is interested and lacks independence for the same reason as Mr. Wright – Conn's own April 15, 2014 proxy statement allegedly did not list Mr. D. Martin as independent under NASDAQ rules.[14] ECF No. 1 at ¶ 136 n.4. Accordingly, the Court does not consider Mr. D. Martin independent or disinterested for the purpose of demand under Rule 23.1.[15]

While Plaintiff adequately pled demand would be futile as to Mr. Wright and Mr. D. Martin, Plaintiff failed to do so for any other Director.

### 3. Audit Committee Defendants: Kelly Malson, David Schofman, and Scott Thompson.

Plaintiff alleges three other Director Defendants—Ms. Malson, Mr. Schofman, and Mr. Thompson—are interested, lack independence, and face a

---

(S.D. Tex. 2001)). Furthermore, that action settled. *See, e.g.*, *In re Rocket Fuel*, 2016 WL 4492582, at *5 (finding directors who were dismissed in securities action "face almost no risk of liability— let alone a substantial likelihood—from that case."). The Court notes that Mr. Wright is a named Defendant in another securities fraud action pending before the same District Judge for similar violations, but Plaintiff made no allegation that it also serves as a basis on which to excuse demand as to Mr. Wright. *See* Compl., *Microcapital Fund LP et al. v. Conn's, Inc. et al.*, No. 4:18-CV-1020 (S.D. Tex. Apr. 2, 2018), ECF No. 1. Even if relevant, the Court already determined that Mr. Wright is interested or lacking independence on other grounds.

[14] Defendants concede that Mr. D. Martin is not listed as independent on the Corporation's proxy statement under NASDAQ listing standards. ECF No. 29 at 12. Defendants contend Mr. Martin was not listed as such because of his connection with Stephens, Inc., which the Court otherwise finds meritless as discussed *infra*. *Id*. However, despite other Board members also having alleged affiliations with Stephens, Inc., the Corporation found only Mr. Martin was not independent on this basis and the Court will presume, resolving all inferences in favor of the Plaintiff, that he lacks sufficient independence for demand futility purposes.

[15] Plaintiff's other allegations as to Mr. D. Martin lack merit as further discussed *infra* with regard to other Directors.

substantial likelihood of personal liability based on their membership on the Audit Committee. ECF No. 1 at ¶¶ 140-149. In the complaint, Plaintiff explains at length the Audit Committee's role and duties in reviewing financial statements; reviewing disclosures made to the Committee by the Corporation's CEO and CFO; preparing reports required by the Securities Exchange Commission ("SEC"); reviewing and discussing the adequacy and effectiveness of the Corporation's internal controls; responsibility for the integrity of the Corporation's financial statements; responsibility for the Corporation's auditing, accounting, and financial reporting processes; and oversight responsibilities. *Id.* at ¶¶ 43-44, 141, 142, 145, 148.

Plaintiff further alleges that each member of the Audit Committee knew about the problems with the Corporation's consumer credit programs because they received "daily reports from Conn's credit and collection department" and had "regular discussions with management in the process of reviewing and approving the dissemination of the false and misleading statements set forth in this complaint." *Id.* at ¶ 143. Plaintiff alleges the Audit Committee "either failed to conduct the requisite reviews or conduct a cursory, defective review" and because of this failure, "approved the issuance of the false and misleading financial statements … and press releases…." *Id.* at ¶ 144. Plaintiff alleges the Audit Committee "failed to implement adequate internal controls over the Company's financial reporting" and "failed to correct the materially false and misleading information[,]" and therefore its members

"face a sufficiently substantial likelihood of liability for breaches of their fiduciary duties of loyalty and good faith." *Id*. at ¶¶ 146, 147, 149.

However, mere membership on the Audit Committee, without more, is not sufficient to excuse demand. *Ellis*, 2018 WL 3360816, at *11 (citations omitted); *accord Wood*, 953 A.2d at 142 (not excusing demand because plaintiff's allegations that directors executed financial disclosures, authorized certain transactions, and served on the audit committee fail to establish the directors knowingly participated in illegal conduct). In addition, Plaintiff's allegations are conclusory. "A plaintiff may not excuse demand 'by merely making conclusory allegations that a director disseminated financial statements he knew to be false.'" *Jones*, 503 F. Supp.2d at 1335 (quoting *In re Computer Sci. Corp. Deriv. Litig.*, No. CV-06-5288 MRP, 2007 WL 1321715, at *9 (C.D. Cal. 2007)).

Plaintiff must explain with particularity how the Audit Committee learned that the statements it approved were false, "who presented it with the information, when, or how the committee members' response or lack thereof rendered them active participants" in the alleged wrongdoing. *Id*. at 1334-35. Vague allegations that the Audit Committee members received "daily reports from Conn's credit and collection department" and had "regular discussions with management in the process of reviewing and approving the dissemination of the false and misleading statements" do not contain sufficient particularity about the content of those reports and

discussions to create a reasonable inference that the Audit Committee members know any statements were false or misleading.[16] These allegations fail to show demand futility under either *Rales* or the first prong of *Aronson*. In addition, to the extent Plaintiff's allegations that the Audit Committee failed to discharge its oversight responsibilities qualify as a *Caremark* claim, Plaintiff's allegations also fail to satisfy the heightened standard under *Caremark*.

### 4. Defendants affiliated with Stephens, Inc.: Jon Jacoby, Bob Martin, and Douglas Martin.

Plaintiff alleges that three of the Board members—Mr. Jacoby, Mr. B. Martin, and Mr. D. Martin—are interested and lack independence because they were placed on the Board by a third-party company, Stephens, Inc. and its affiliates, who are significant longtime shareholders of Conn's. ECF No. 1 at ¶¶ 156, 157, 162. Plaintiff alleges that between 2010 and 2014, Stephens, Inc. and its affiliates held between 22.3% and 24.9% of Conn's stock, and prior to Conn's initial public offering ("IPO") in 2003, held at least 70% of Conn's stock. *Id.* at ¶ 158. Plaintiff further alleges that

---

[16] Plaintiff also emphasizes a reference in a July 2014 New York Times article stating that Mr. Schofman allegedly typed a message to Mr. Wright about consumer credit while on the phone with the reporter. ECF No. 1 at ¶ 85. Plaintiff alleges the "spontaneity of Schofman's communication with Wright exemplifies the Audit Committee Defendants' direct and regular involvement in, and their knowledge of, the issues regarding the Company's consumer credit programs." ECF No. 30 at 18-19. However, the mere allegation that a Director typed a message to the CEO does not include any other factual information about what specifically Mr. Schofman wrote to Mr. Wright about, whether Mr. Wright responded, whether this was typical, or what information Mr. Schofman (or other Audit Committee Defendants) specifically had that indicated their knowledge of the falsity of Conn's public statements.

the rest of the Board is beholden to, dominated, and controlled by Mr. Jacoby, Mr. B.

Martin, and Mr. D. Martin. *Id*. at ¶ 155. Plaintiff alleges that:

> Jacoby is currently the vice chairman and senior managing director of The Stephens Group, LLC, and has been employed at Stephens, Inc. and its affiliates since 1963. D. Martin is currently an executive vice president of Stephens, Inc., where he has been employed since 1981. B. Martin, a Conn's director since 2003, is currently an operating partner of The Stephens Group, LLC and has held that position since at least 2012. Before his employment at The Stephens Group, LLC, B. Martin established decades-long careers at two Arkansas-based retailers, Walmart International, Inc. and Dillards, Inc., both of which had close historical ties with Stephens, Inc. and its affiliates.

*Id*. at ¶ 157. Plaintiff alleges that Stephens, Inc. and its affiliates have long exercised

domination and control over the Board. *Id*. at ¶ 159.

Plaintiff alleges the domination and control is evidenced by the fact that the

Board has approved multimillion-dollar transactions to engage the services of Direct

Marketing Solutions, Inc. ("DMS"), and that Stephens, Inc. and its affiliates own

DMS or its parent companies. *Id*. at ¶ 159. Plaintiff also alleges that the Board

engaged the brokerage and financial-advisory services of Stephens, Inc. and its

affiliates several times over a span of five years. *Id*. at ¶ 160. Plaintiff alleges these

transactions were entered into for the benefit of Stephens, Inc. and its affiliates, and

Conn's admitted to such domination and control in its March 27, 2014 Form 10-K:

> Our corporate actions may be substantially controlled by our principal shareholders and affiliated entities. As of January 31, 2014, Stephens, Inc., The Stephens Group, LLC, and their respective affiliates beneficially owned a significant portion of our common stock … Stephens Inc. and the beneficial owners of the shares that were previously held in the voting trust and The Stephens Group, LLC could exert substantial influence over determining the

outcome of any corporate transaction or other matter submitted to the stockholders for approval, including election of directors …. The interests of Stephens Inc. and The Stephens Group, LLC, and their respective affiliates, may differ from or be adverse to the interest of our other stockholders. …

*Id*. at ¶ 161.

However, the mere fact that some of the Directors have business relationships with Stephens, Inc. and its affiliates is an insufficient basis to excuse demand.

The basic hurdle for plaintiffs stems from the fact that the kind of relationships alleged in the complaint exist at many companies. Directors tend to be experienced and accomplished business persons; those individuals also tend to … have a wide range of professional and charitable affiliations and relationships. It is usually considered in the interests of corporations and their shareholders to attract experienced and accomplished business leaders as directors. … Only professional or personal friendships that "border on or even exceed familial loyalty and closeness[] may raise a reasonable doubt whether a director can appropriately consider demand." … The commonplace business, professional, and personal relationships alleged in this case are not remotely sufficient under Delaware law to disqualify the challenged directors from evaluating demand in an independent manner.

*Pirelli Armstrong Tire Corp. Retiree Medical Benefits Trust ex rel. Fed. Nat. Mortg. Ass'n v. Raines*, 534 F.3d 779, 793-94 (D.C. Cir. 2008) (applying Delaware law) (internal citations omitted). "[I]t is not enough to charge that a director was nominated by or elected at the behest of those controlling the outcome of a corporate election. That is the usual way a person becomes a corporate director." *Aronson*, 473 A.2d at 816. In addition, "stock ownership alone, at least when it amounts to less than a majority, is not sufficient proof of domination or control." *Id*. at 815.

Here, Plaintiff's allegations fail to plead how Stephens, Inc. or its affiliates

had any interest in, or could have influenced in any way, the Board's actions challenged by this lawsuit. The 10-K statement likewise fails to include sufficient detail indicating the Board could not consider a demand due to the influence of Stephens, Inc. in this context. "There must be some alleged nexus between the domination and the resulting personal benefit to the controlling party.'" *Strong*, 877 F. Supp. 2d at 452 (quoting *Highland Legacy Ltd. v. Singer*, No. Civ-A-1566-N, 2006 WL 741939, at *8 (Del. Ch. Mar. 17, 2006)). "[A] plaintiff charging domination or control of one or more directors must allege particularized facts manifesting 'a direction of corporate conduct in such a way as to comport with the wishes or interests of the corporation (or persons) doing the controlling." *Grobow*, 526 A.2d at 924 (quoting *Aronson*, 473 A.2d at 816). The mere fact that the Board approved some transactions that may have benefited Stephens, Inc. or its affiliates, and which are completely unrelated to the conduct challenged here, is not enough to show that Stephens, Inc. "so controlled the directors' decisionmaking as to mean they lacked independence to consider a demand." *Pirelli*, 534 F.3d at 794.

### 5.  Insured vs. insured exclusion.

Plaintiff further alleges in the complaint that demand would be futile under what is referred to as the "insured verses insured exclusion." ECF No. 1 at ¶ 165. Specifically, Plaintiff alleges there would be no directors and officers liability insurance ("D&O Insurance") protection if the Individual Defendants brought suit

against themselves, but there would be D&O coverage if the claims were asserted in a derivative action. *Id*. However, the "insured v. insured clause exclusion argument has been regularly rejected by courts" as a basis for demand futility under Delaware law. *Freuler*, 803 F. Supp. 2d at 651-52 (citations omitted).

### 6. Group allegations.

Plaintiff makes additional group allegations against all the Individual Defendants that "[t]he consumer credit business is the core product of Conn's[,]" therefore "all Director Defendants are charged with the knowledge of the true facts regarding the consumer credit program," and "[d]espite their knowledge of the true facts regarding the consumer credit programs and the financial condition of Conn's, the Director Defendants approved the dissemination of false and misleading information in the public disclosures made by Conn's." ECF No. 1 at ¶¶ 150-53. Therefore, Plaintiff alleges the Director Defendants "face a substantial likelihood of liability" for breaching their fiduciary duties and demand is futile. *Id*. at ¶ 154, 163.

First, group allegations are insufficient to excuse demand. Under Delaware law, a plaintiff must plead with particularity the reasons for excusing demand as to each director individually. *In re Rocket Fuel*, 2016 WL 4492582, at *6 (rejecting allegations about "insider selling defendants" as an undifferentiated group and requiring plaintiff to "allege <u>specific</u> facts as to what <u>particular</u> material information any individual defendant knew, or when and how he or she knew it") (emphasis in

original); *In re Citigroup*, 964 A.2d at 121 n.36 (rejecting plaintiffs' "'group' accusation mode of pleading demand futility" and noting that "[h]ad plaintiffs provided individual allegations as to each of the director defendants, the outcome of his case may have been different."); *DeSimone v. Barrows*, 924 A.2d 908, 935, 940 (Del. Ch. 2007) ("a derivative complaint must plead facts *specific to each director*") (emphasis in original).

Second, the core business theory has been rejected as a basis for excusing demand. *In re Rocket Fuel*, 2016 WL 4492582, at *6 (rejecting "core operations" argument in assessing demand futility); *accord Jones*, 503 F. Supp.2d at 1337.

Third, it is "well-settled that an allegation that a majority of directors approved, participated, or acquiesced in a challenged transaction will not, in and of itself, establish demand futility."[17] *Grobow*, 526 A.2d at 924 (citations omitted);

---

[17] In addition, Plaintiff challenges many of the same statements that were at issue in the related securities class action before the same District Judge presiding over this case. *See* ECF No. 1 at ¶¶ 59, 60, 64, 65, 70, 72, 74, 76, 77, 78, 86, 87, 91, 108, 109, 111, 120. Applying the relevant pleading standards under the Private Securities Litigation Reform Act, the District Judge struck many of those statements from the Fourth Amended Complaint in the securities class action because they were not materially misleading. *See* Mot. Hr'g Tr. at 71:17-72:25, 89:11-111:13, *In re Conn's*, No. 4:14-CV-548 (S.D. Tex. Mar. 25, 2016), ECF No. 117 (striking statements in paragraphs 64, 65, 68, 69, 74, 79-83, 90, and 91); Mot. Hr'g Tr. at 29:21-31:11, 40:4-42:18, *In re Conn's*, No. 4:14-CV-548 (S.D. Tex. Mar. 29, 2016), ECF No. 118 (striking statements in paragraphs 98, 112, 113, 123, and part of paragraph 111); *see also* Order, *In re Conn's*, No. 4:14-CV-548 (S.D. Tex. May 5, 2016), ECF No. 125. Thus, those statements cannot be used to excuse demand here. *See In re Yahoo!*, 153 F. Supp. 3d at 1120 (not excusing demand where plaintiffs challenged same statements at issue in the class action, and which were deemed not materially misleading). The fact that many of those statements were already found not to be materially misleading reduces the Directors' likelihood of personal liability for issuing those statements here.

*accord In re Yahoo!*, 153 F. Supp. 3d at 1120 (conclusory allegations that directors "signed" or were involved in "reviewing" disclosures do not excuse demand); *Jones*, 503 F. Supp. 2d at 1333 (group allegations that directors participated in the issuance of false or misleading statements and would have to sue themselves do not excuse demand); *Pedroli ex rel. Microtune, Inc. v. Bartek*, 564 F. Supp. 2d 683, 695 (E.D. Tex. 2008) (applying Delaware law) ("[A] plaintiff may not 'bootstrap allegations of futility' by pleading merely that 'the directors participated in the challenged transaction or that they would be reluctant to sue themselves.'") (citations omitted); *Ellis*, 2018 WL 3360816, at *10 (allegations that the defendants "reviewed and approved" disclosures or "caused or allowed" the corporation to issue misleading statements do not excuse demand); *Goldfarb*, 2012 WL 13028298, at *6-7 (allegations that the board "'caused' the issuance of misrepresentations" or "participated in the challenged action" do not excuse demand); *Aronson*, 473 A.2d at 814 (rejecting the notion that "any board approval of a challenged transaction automatically connotes 'hostile interest' and 'guilty participation' …. Were that so, the demand requirements of our law would be meaningless…."); *see also Vitellone v. Evans*, No. H-13-1887, 2013 WL 6806179, at *9 (S.D. Tex. Dec. 20, 2013) (applying Delaware law) (not excusing demand as to allegations that defendants disseminated misleading statements because they lacked particularity).

Plaintiff did not allege specific facts about what each Director knew, "when

and how the board knew that fact; [] and that the board, knowing this fact, nevertheless affirmatively authorized the issuance of statements to the contrary[.]" *Goldfarb*, 2012 WL 13028298, at *7. Plaintiff also failed to describe with particularity "how the board was actually involved in creating or approving the statements…."[18] *Ellis*, 2018 WL 3360816, at *10. Plaintiff's allegations fail to demonstrate demand futility under either *Rales* or the first prong of *Aronson*.

### 7. Non-exculpated claims.

To the extent Plaintiff is required to plead non-exculpated claims in light of the certificate of incorporation's exculpatory clause, Plaintiff alleged that the Defendants breached their duties of loyalty and good faith. ECF No. 1 at ¶¶ 53, 135, 147, 170, 188, 189. The Delaware Supreme Court has recognized that the dissemination of false information could violate fiduciary duties of care, loyalty, *or* good faith. *Malone v. Brincat*, 722 A.2d 5, 11 (Del. 1998) (emphasis added);[19]

---

[18] *Accord Strong*, 877 F. Supp. 2d at 448 ("When a Plaintiff does not allege facts suggesting that the Individual Defendants prepared the financial statements or that they were directly responsible for the misstatements or omissions then this Court cannot reasonably conclude that the Individual Defendants face a substantial likelihood of liability" for mere execution of financial reports.); *In re Citigroup*, 964 A.2d at 134 (not excusing demand where plaintiff failed to plead particularized facts showing directors' involvement in the preparation of allegedly misleading disclosures other than reviewing them, or that they knew any disclosures or omissions were false).

[19] "*Malone* established that directors owe a duty not to knowingly disseminate false information to stockholders, even when the directors are not seeking stockholder action.  To plead a disclosure claim where there is no request for stockholder action, a plaintiff must allege that the directors 'deliberately misinform[ed] shareholder about the business of the corporation, either directly or by a public statement.' … Because [the corporation's] charter contains a Section 102(b)(7) exculpatory provision, the Plaintiff here cannot establish demand futility based on his disclosure claims unless he 'plead[s] particularized factual allegations that 'support the inference that the

*accord In re TASER Int'l S'holder Deriv. Litig.*, No. CV-05-123, 2006 WL 687033, at *12 (D. Ariz. Mar. 17, 2006) (applying Delaware law) (exculpatory provision in certificate of incorporation does not bar claims based on disseminating misleading and inaccurate information and insider trading); *In re Cendant Corp.*, 189 F.R.D. at 133 (exculpatory provision in certificate of incorporation does not bar claims based on allegations that defendants *knowingly* issued public false and misleading statements). In addition, to the extent Plaintiff's allegations against the Audit Committee can be construed as oversight violations, "[a] breach of oversight responsibilities is a breach of the duty of loyalty, and thus not exculpated under section 102(b)(7)." *In re Goldman Sachs*, 2011 WL 4826104, at *18.

Plaintiff also alleged the Directors acted knowingly. ECF No. 1 at ¶¶ 7, 88, 101, 106, 117, 126, 143, 148, 173, 186, 188. However, he must plead particularized facts beyond conclusory allegations that demonstrate scienter, including how, when, and from whom the Defendants obtained the knowledge upon which they *knowingly* violated duties of loyalty and good faith. Plaintiff failed to do this.

### 8. Cumulative allegations of demand futility.

"Having found each of Plaintiff's allegations insufficient when considered in isolation, the Court must decide whether the totality of Plaintiff's allegations

---

disclosure violation[s] w[ere] made in *bad faith, knowingly or intentionally.*'" *Ellis*, 2018 WL 3360816, at *5 (emphasis in original).

demonstrate reasonable doubt about the Board's impartiality." *Jones*, 503 F. Supp. 2d at 1341 (citing *Harris v. Carter*, 582 A.2d 222, 229 (Del. Ch. 1990)). The Court finds that Plaintiff's allegations, even considered cumulatively, fail to plead demand futility with particularity for at least half of the Directors on the Board.

Notably, the Plaintiff did not make a demand to obtain books and records under 8 Del. Code § 220 before filing his complaint. "Having failed to heed the numerous admonitions by our judiciary for derivative plaintiffs to obtain books and records before filing a complaint, the [plaintiff] [has] unsurprisingly submitted [a complaint] that lacks particularized facts compromising the impartiality of the [Conn's] board that would have acted on a demand[,]" and instead appears to merely have copied most of the complaint that was filed in the related securities class action. *Guttman*, 823 A.2d at 493 (not excusing demand where plaintiff failed to plead particularized facts, failed to make a books and records request, and merely based their complaint on the related securities action complaint);[20] *accord Wood*, 953 A.2d at 143-44 (not excusing demand where plaintiff failed to plead particularized facts

---

[20] At the time this complaint was filed on December 1, 2014, plaintiffs in the related securities class action had filed a second amended complaint. *Compare* ECF No. 1 *with* Second Am. Compl., *In re Conn's*, No. 14-CV-548 (S.D. Tex. Oct. 29, 2014), ECF No. 56. After this action was stayed on January 30, 2015, ECF No. 18, plaintiffs in the related class action amended their complaint twice more. *See* Third Am. Compl., *In re Conn's*, No. 14-CV-548 (S.D. Tex. Apr. 10, 2015), ECF No. 86; Fourth Am. Compl., *In re Conn's*, No. 14-CV-548 (S.D. Tex. July 21, 2015), ECF No. 104. The District Judge granted the defendants' motion to dismiss the Fourth Amended Complaint in part, striking substantial portions of the complaint. Order, *In re Conn's*, No. 14-CV-548 (S.D. Tex. May 5, 2016), ECF No. 125.

and failed to make a books and records request). "These books and records could have provided the basis for the pleading of particularized facts…." *Guttman*, 823 A.2d at 504.

This complaint stands in contrast to other cases in which demand was excused because the plaintiffs pled particularized facts about specific information that was given to directors and which they disregarded. *See, e.g.*, *Rosenbloom v. Pyott*, 765 F.3d 1137, 1141, 1153 (9th Cir. 2014) (applying Delaware law) (excusing demand where the plaintiff, relying on a demand for books and records, pled detailed information the board received but consciously ignored, such as repeated FDA warnings); *In re Pfizer*, 722 F. Supp. 2d at 460 ("the Complaint details at great length a large number of reports made to members of the board from which it may reasonably be inferred that they all knew of Pfizer's continued misconduct and chose to disregard it"); *In re China Agritech*, 2013 WL 2181514, at *17, 27 (excusing demand where plaintiff pled particularized facts, in reliance on books and records it obtained under Section 220). Thus, although Plaintiff sufficiently pled demand futility for two Directors, he failed to do so for at least four members of the Board. Plaintiff's claim for breach of fiduciary duty should be dismissed.

### C. Demand Is Not Excused For Plaintiff's Unjust Enrichment And Gross Mismanagement Claims.

Defendants cited cases indicating that under Delaware law, claims for unjust enrichment and gross mismanagement are considered duplicative of claims for

breach of fiduciary duty. *See Friedman v. Khosrowshahi*, No. 9161-CB, 2014 WL 3519188, at *13 (Del. Ch. July 16, 2014) (not excusing demand for unjust enrichment claim based on the same reasons for not excusing demand as to breach of fiduciary duty claim because unjust enrichment claim "is derivative of the fiduciary duty claim"), *aff'd*, No. 442, 2015 WL 1001009 (Del. Mar. 6, 2015); *accord Seinfeld v. Slager*, No. 6462-VCG, 2012 WL 2501105, at *16 (Del. Ch. June 29, 2012) (same); *see also In re Citigroup*, 964 A.2d at 114 n.6 (dismissing gross mismanagement claim under Rule 23.1 based on the same reasons for dismissing breach of fiduciary duty claim because a claim for gross mismanagement is the same as a claim for breach of fiduciary duty). Plaintiff did not provide contrary authority. Thus, for the same reasons that Plaintiff's fiduciary duty claim should be dismissed, his unjust enrichment and gross mismanagement claims should also be dismissed.

### D. Demand Is Not Excused For Plaintiff's Insider Trading Claim.

Plaintiff contends demand would be futile because Mr. Wright (and implicitly Mr. Jacoby, Mr. D. Martin, and Mr. Thompson) faces a substantial likelihood of liability for insider trading.[21] ECF No. 1 at ¶ 139.

---

[21] Plaintiff includes his insider trading allegations as to Mr. Jacoby, Mr. D. Martin, and Mr. Thompson as part of his complaint's "substantive allegations" of misconduct, but not in the section addressing "derivative and demand futility allegations" for any Director other than Mr. Wright. Therefore, it is not entirely clear on the face of the complaint that Plaintiff alleges this is a basis for excusing demand as to Mr. Jacoby, Mr. D. Martin, and Mr. Thompson. However, Plaintiff alleges in his opposition brief that "the Director Defendants' violations of the Company's

Plaintiff alleges that because of the Board's issuance of false and misleading public statements, "Conn's stock traded at artificially-inflated prices during the Relevant Period." *Id*. at ¶ 3. Plaintiff alleges that while the stock prices were inflated, four Directors—Mr. Wright, Mr. Jacoby, Mr. D. Martin, and Mr. Thompson—"sold at least 1,313,964 shares of Conn's stock, receiving approximately $66,886,993.49 in proceeds[,]" using insider information regarding Conn's true financial condition. *Id*. at ¶¶ 4, 124-25, 139. The Plaintiff lists the challenged stock sales and their dates, and makes the following group allegations collectively against the four Directors regarding insider trading:

> [A]ll the Individual Defendants had knowledge of the falsity of the statements they caused Conn's to make in that all individual Defendants knew, or were reckless in not knowing, that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws. … [T]he Individual Defendants, by virtue of their receipt of information reflecting the true facts regarding Conn's, their control over, and/or receipt and/or modification of the allegedly materially misleading misstatements and/or their associations with the Company, which made them privy to confidential proprietary information concerning Conn's participated in the unlawful scheme….

*Id*. at ¶ 126.

Between April 3, 2013 and February 19, 2014, Defendants Wright, Jacoby,

---

insider trading policy … cast[s] doubt on the Board's independence," ECF No. 30 at 24, and Defendants likewise assume that Plaintiff makes this argument, ECF No. 29 at 25. While Plaintiff must explicitly make such allegations as to each Director in the complaint, the Court will assume he did so, construing the complaint liberally in his favor.

D. Martin, Thompson, and Poppe knew the information described above, and sold Conn's stock on the basis of such information.

The information described above was proprietary non-public information concerning the financial condition and future business prospects of Conn's. It was a proprietary asset belonging to Conn's, which Defendants Wright, Jacoby, D. Martin, Thompson, and Poppe used for their own benefit when they sold the stock.

At the time of their stock sales, Defendants Wright, Jacoby, D. Martin, Thompson, and Poppe knew that the Company's financial results were overstated…. Their sales of Conn's stock while in the possession and control of this material adverse, non-public information was a breach of their fiduciary duties of loyalty and good faith.

*Id.* at ¶¶ 186-188.

To determine if a director faces a substantial likelihood of liability for insider trading, "it must be shown that each sale by each individual defendant was entered into and completed on the basis of, and because of, adverse material non-public information." *Rattner v. Bidzos*, No. Civ-A-19700, 2003 WL 22284323, at *11 (Del. Ch. Sept. 3, 2003) (citations omitted); *accord Guitierrez*, 2005 WL 2121554, at *8. Conclusory allegations that defendants "sold stock at a time when they knew material, non-public information" are insufficient to excuse demand. *In re Rocket Fuel*, 2016 WL 4492582, at *6. "[I]t is unwise to formulate a common law rule that makes a director 'interested' whenever a derivative plaintiff cursorily alleges that [a director] made sales of company stock in the market at a time when he possessed material, non-public information." *Id.* (quoting *Guttman*, 823 A.2d at 502).

Other than making conclusory allegations that the Directors possessed

33

material, non-public information when they sold their shares, Plaintiff "does not allege specific facts as to what particular material information any individual defendant knew, or when and how he or she knew it." *Id.*; *accord Rattner*, 2003 WL 22284323, at *10; *Guttman*, 823 A.2d at 503.[22]

Nor does Plaintiff explain why the timing of each sale raises an inference of insider trading. The only common pattern is that the sales were made during the Relevant Period over a span of almost one year.[23] Other than for Mr. Wright,[24] the complaint also fails to specify what trades the Directors previously made, if any; whether the Directors may have made their sales for other reasons; and what percentage of each Director's stock was sold. *See Rattner*, 2003 WL 22284323, at *10-12 (not excusing demand for insider trading claim); *Guttman*, 823 A.2d at 504 (same). The mere fact that they sold substantial amounts of stock is likewise

---

[22] *See also In re Hecla*, 2014 WL 689036, at *15 (not excusing demand based on insider trading allegations where plaintiff made conclusory allegations and no particularized facts exist to indicate the defendants improperly used material, non-public information); *Jones*, 503 F. Supp.2d at 1338 (not excusing demand based on insider trading allegations where Plaintiff alleged defendants had access to material non-public information because of their "access to and review of internal corporate documents; conversations and connections with other corporate officers, employees, and directors….", but "did not provide any particularized information about the internal corporate documents that [defendants] allegedly reviewed, details of the conversations they had with other corporate officers, or what information was discussed at the Board meetings….").

[23] *See also In re Pfizer, Inc. Deriv. Sec. Litig.*, 307 F. App'x 590, 594 (2d Cir. 2009) (applying Delaware law) (finding plaintiffs' allegations regarding insider trading fail to excuse demand because they "give no reason why their timing suggest trading on the basis of inside information."); *Guttman*, 823 A.2d at 503 (not excusing demand based on insider trading allegations because "the timing of the defendants' trades is quite disparate, having only the common pattern of coming after the filing of a certified financial statement.").

[24] Plaintiff alleges Mr. Wright had not sold any Conn's shares since 2007. ECF No. 1 at ¶ 139.

insufficient to support an inference of insider trading. *Guttman*, 823 A.2d at 504.

Though the Court already determined that Mr. Wright and Mr. D. Martin are interested or lacking independence on other grounds as discussed above, Plaintiff's allegations regarding insider trading (even in combination with other allegations) are not pled with sufficient particularity to excuse demand for at least half of the Board. Therefore, Plaintiff's insider trading claim should be dismissed.

### III.
### RULE 12(b)(6)

#### A. Legal Standard For Failure To State A Claim Under Rule 12(b)(6).

A court may dismiss a complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). "Motions to dismiss under Rule 12(b)(6) are viewed with disfavor and are rarely granted." *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009) (citation omitted). "Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009).

The complaint must include more than mere "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks and citations omitted). A complaint must "contain sufficient factual matter … to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550

U.S. at 570). A claim is plausible "when the pleaded factual contents allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Bowlby v. City of Aberdeen, Miss.*, 681 F.3d 215, 219 (5th Cir. 2012). "[A] complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Culliver v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555).

The ultimate question "is whether the complaint states a valid claim when viewed in the light most favorable to the plaintiff." *Brown v. Bd. of Trustees Sealy Indep. Sch. Dist.*, 871 F. Supp. 2d 581, 590 (S.D. Tex. 2012). "[I]n considering a motion to dismiss under Rule 12(b)(6), a complaint must be liberally construed in favor of the plaintiff and all well-pleaded facts taken as true." *Duke Energy Int'l*, 748 F. Supp. at 665. "[C]ourts are required to dismiss, pursuant to [Rule 12(b)(6)], claims based on invalid legal theories, even though they may be otherwise well-pleaded." *Farshchi v. Wells Fargo Bank, N.A.*, No. H-15-1692, 2016 WL 2858903, at *2 (S.D. Tex. May 13, 2016) (citing *Flynn v. State Farm Fire and Cas. Ins. Co.*, 605 F. Supp. 2d 811, 820 (W.D. Tex. 2009)).

## B. Breach Of Fiduciary Duty.

### 1. Defendants contend Plaintiff failed to state a *Caremark* claim.

Defendants argue that Plaintiff failed to state a *Caremark* claim for breach of

fiduciary duty because Plaintiff failed to plead "red flags" that would have put the Defendants on notice of Conn's financial problems, but which they consciously disregarded, as required to show bad faith and scienter under a *Caremark* claim. ECF No. 29 at 27-28.

In support, Defendants rely on *Taylor v. Kissner* and *DeSimone v. Barrows* to argue that Plaintiff must plead bad faith. However, in *Taylor*, the relevant section that Defendants rely on discusses the standard for pleading a *Caremark* claim under Rule 23.1, not 12(b)(6). *See Taylor*, 893 F. Supp. 2d at 670. Even though Plaintiff's complaint may fail the heightened pleading standard under Rule 23.1, that does not mean Plaintiff otherwise fails to meet the 12(b)(6) standard.

In *DeSimone*, the court explained that, "to state a viable *Caremark* claim … a plaintiff must plead the existence of facts suggesting that the board knew that internal controls were inadequate, that the inadequacies could leave room for illegal or materially harmful behavior, and that the board chose to do nothing about the control deficiencies that it knew existed[,]" and that the Board must have acted with scienter. 924 A.2d at 935, 940. To the extent the Plaintiff attempted to allege a *Caremark* claim, the Court agrees that those allegations should be dismissed as conclusory.[25]

---

[25] As Defendants argued, some of Plaintiff's allegations undermine the plausibility of a *Caremark* claim. ECF No. 29 at 28 (citing ECF No. 1 at ¶ 31-45, 61). For example, the complaint describes policies that were in place to ensure the integrity of financial reporting and that Audit Committee members received "daily reports from Conn's credit and collection department" and had "regular

*See supra* Section II.A.4.

However, Plaintiff alleges in his opposition he is not bringing a *Caremark* claim. Indeed, most of the allegations regarding the Board's conscious approval of allegedly false and misleading statements and insider trading can be construed as non-*Caremark* claims. *See, e.g.*, *Vitellone*, 2013 WL 6806179, at *5-10 (analyzing plaintiffs' allegations of dissemination of false and misleading statements separately from *Caremark* allegations); *In re Citigroup*, 964 A.2d at 123-35 (same). Defendants' arguments do not show that Plaintiff failed to state a claim for the non-*Caremark* claims. Nevertheless, that does not end the inquiry as to those claims.

### 2. Defendants contend Plaintiff must satisfy the pleading requirements for fraud under Rule 9(b).

Defendants also argue that because the complaint brings claims based on "alleged misrepresentations or omissions that sound in fraud, Federal Rule of Civil Procedure 9(b) also requires him to 'state with particularity the circumstances constituting fraud or mistake.'" ECF No. 29 at 15. Plaintiff contends his allegations do not sound in fraud and that he is not required to meet the Rule 9(b) standard. ECF No. 30 at 27. In the alternative, Plaintiff argues that if he is required to satisfy Rule 9(b), the complaint does so. *Id.* (citing *In re TASER*, 2006 WL 687033, at *13)).

*In re TASER* clearly indicates that Rule 9(b)'s particularity requirement

---

discussions with management in the process of reviewing and approving the dissemination of the false and misleading statements set forth in this complaint." ECF No. 1 at ¶¶ 35-45, 143.

applies in cases such as this where the plaintiff alleges the defendants "breached their fiduciary duties of care, loyalty, and good faith by 'causing or allowing the Company to disseminate to the Market materially misleading and inaccurate information through public statements, including, but not limited to press releases and SEC filings.'" 2006 WL 687033, at *14 (applying Rule 9(b) pleading standard).

Rule 9(b) requires a party to "state with particularity the circumstances constituting fraud or mistake." FED. R. CIV. P. 9(b). "Rule 9(b) requires 'the who, what, when, where, and how' [of the alleged fraud] to be laid out." *In re BP p.l.c. Sec. Litig.*, 109 F. Supp. 3d 946, 954 (S.D. Tex. 2014) (quoting *Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003)).

The Court finds that Plaintiff sufficiently pled "'the who, what, when, where, and how' [of the alleged fraud]" as required under Rule 9(b) regarding false and misleading statements made by Mr. Wright, Mr. Poppe, and Mr. Taylor. The Plaintiff identified specific purportedly false and misleading statements and reports made or signed by each of them. ECF No. 1 at ¶¶ 58-123. *In re TASER* found that similar allegations satisfied the Rule 9(b) standard. 2006 WL 687033, at *16. To the extent Plaintiff contends these Defendants "knowingly" made false and misleading statements—even though this may lack the level of particularity required to excuse demand under Rule 23.1—this likely satisfies Rule 9(b) under which "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged

generally."[26] FED. R. CIV. P. 9(b).

In contrast, Plaintiff failed to satisfy Rule 9(b)'s particularity requirement with regard to the outside Directors. Plaintiff only averred in conclusory fashion that all Director Defendants "reviewed," "approved," or "signed" false and misleading statements and reports, or that Conn's as a company issued false and misleading press releases, without explanation as to how each outside Director was personally involved. Accordingly, had Plaintiff adequately alleged demand futility, his claim for breach of fiduciary duty as to Mr. Wright, Mr. Poppe, and Mr. Taylor would have survived under Rules 8 and 9(b). Plaintiff's claim for breach of fiduciary duty as to Mr. B. Martin, Mr. Jacoby, Ms. Malson, Mr. D. Martin, Mr. Schofman, and Mr. Thompson fail under Rule 9(b).

## C. Gross Mismanagement And Unjust Enrichment.

As discussed above, claims for unjust enrichment and gross mismanagement

---

[26] Plaintiff generally alleges that each Defendant knew "(a) Conn's was growing its sales revenues and financial results by utilizing underwriting and collections practices that, despite the statements to the contrary, weakened its portfolio quality and left it susceptible to substantial increases in its delinquency rates and bad debt; (b) Conn's faced increased delinquency and charge-off rates in its credit segment; (c) Conn's financial performance was substantially and materially threatened due to the Company's practices in its credit segment; (d) rather than approving just 'some' customers in new stores that would otherwise not have been approved 'for a brief period of time,' all new store customers were approved for credit in order to meet sales quotas, including customers with abysmal FICO scores and customers who previously had been denied credit at other Conn's stores; and (e) … the statements regarding the Company's financial performance were false and misleading and lacked a reasonable basis when made." ECF No. 1 at ¶¶ 2, 71, 83. Plaintiff also alleges "Wright was informed of the Company's collections problems through daily reports from the credit and collections department." *Id.* at ¶ 152.

are duplicative of claims for breach of fiduciary duty and should be disposed of in the same manner. *See Friedman*, 2014 WL 3519188, at *13; *Seinfeld*, 2012 WL 2501105, at *16; *In re Citigroup*, 964 A.2d at 114 n.6; *see also Frank v. Elgamal*, No. 6120-VCN, 2014 WL 957550, at *31 (Del. Ch. Mar. 10, 2014) ("The Court frequently treats duplicative fiduciary duty and unjust enrichment claims in the same manner when resolving a motion to dismiss. For example, if the Court dismisses a fiduciary duty claim for failure to state a claim, then it very likely also dismisses a duplicative unjust enrichment claim. Conversely, where the Court does not dismiss a breach of fiduciary duty claim, it likely does not dismiss a duplicative unjust enrichment claim.").[27]

### D. Insider Trading.

Defendants contend that Plaintiff's claim for insider trading should be dismissed for failure to state a claim under Rule 12(b)(6). ECF No. 29 at 29-30. Both parties agree that under Delaware law, to state a claim for insider trading—

---

[27] As to Plaintiff's unjust enrichment claim, Defendants also argue that "one Texas court has suggested that an unjust enrichment claim does not relate to the 'rights, powers, and duties of [the Board's] governing authority, governing persons, officers, owners, and members,' … and thus that Texas substantive law should govern such claims … [and] if Texas law were applied, Plaintiff's unjust enrichment claim would require dismissal for the additional reason that Texas does not recognize an independent tort for unjust enrichment." ECF No. 29 at 29 n.13 (citing *Madison P'ship Liquidity Inv'rs 31, LLC*, No. SA98CA324, 1998 WL 1782544, at *2 (W.D. Tex. Sept. 28, 1998)). Plaintiff objects that Defendants' reliance on Texas law is irrelevant. ECF No. 30 at 30 n.17. In *Madison*, the Court relied in part on a choice of law analysis to determine that Texas state law applied in that context. Such briefing is absent here, so the Court does not rely on this argument to dispose of Plaintiff's claim.

commonly known as a *Brophy* claim—the Plaintiff must plead that "(1) the corporate fiduciary possessed material, nonpublic company information; and (2) the corporate fiduciary used that information improperly by making trades because she was motivated, in whole or in part, by the substance of that information." *See In re Primedia, Inc., S'holders Litig.*, No. 6511, 2013 WL 6797114, at *13 (Del. Ch. Dec. 20, 2013) (quoting *In re Oracle Corp.*, 867 A.2d 904, 934 (Del. Ch. 2004), *aff'd*, 872 A.2d 960 (Del. 2005)).

### 1. Possession of material, nonpublic company information.

Regarding the first element, Plaintiff generally alleged that each Defendant knew the true poor financial condition of Conn's.[28] Plaintiff also alleged that each Defendant caused the Corporation to make false and misleading statements and knowingly failed to disclose that "(a) the Company's revenue and financial results were overstated; (b) the Company lacked adequate internal and financial controls; and (c) as a result of the foregoing, the Company's financial statements were materially false or misleading…." ECF No. 1 at ¶ 53.

Defendants contend Plaintiff failed to "allege what specific material, non-public information each director possessed at the time of each stock sale," thereby failing to plead the first element. ECF No. 29 at 29. Defendants did not, however, cite any authority for how specifically these allegations for the first element must be

---

[28] *See supra* n.26.

42

pled under the liberal 12(b)(6) standard. While Plaintiff did not allege with a high degree of detail what information each Defendant possessed at the time of each sale, requiring this level of detail would likely have the effect of displacing the more liberal 12(b)(6) standard with the particularity requirements of Rule 23.1. Indeed, with regard to whether Plaintiff stated a *Brophy* claim, Defendants largely reiterate their arguments for why Plaintiff failed to plead demand futility. But even assuming Plaintiff sufficiently alleged the first element, Plaintiff failed to adequately allege the second element for a *Brophy* claim.

### 2.  Making trades that are motivated by the insider information.

Regarding the second element, Plaintiff alleged that because of the Board's issuance of false and misleading public statements, "Conn's stock traded at artificially-inflated prices during the Relevant Period" and during that time, "five of the Individual Defendants—Mr. Wright, Mr. Jacoby, Mr. D. Martin, Mr. Thompson, and Mr. Poppe—sold over 1.3 million shares of their Conn's stock for over $66 million using material non-public information regarding Conn's financial condition." ECF No. 1 at ¶¶ 3-4, 124.

Defendants contend that Plaintiff lacks "individualized allegations linking any defendant to specific insider knowledge motivating particular trades," failing to satisfy the second element. While Defendants again do not cite authority explaining how detailed these allegations must be under 12(b)(6), and only rely on *Guttman*

which analyzed insider trading allegations under Rule 23.1, the Court finds that these allegations are conclusory. "[A] plaintiff must assert some causal relationship between the alleged confidential information and the profit that the defendant is said to have derived from the unlawful purchase or sale." *In re Sagent Tech., Inc., Deriv. Litig.*, 278 F. Supp. 2d 1079, 1092 (N.D. Cal. 2003) (applying Delaware law) (finding complaint failed to state a claim where it did "not allege facts showing that the defendants who sold stock during the approximately 28-month period at issue in the complaint possessed any specific material, nonpublic information at the time of each of those transactions, nor that they traded on the basis of such information.").

For example, Plaintiff relies on *In re Primedia* to argue it pled a *Brophy* claim. While *In re Primedia* was deciding a motion for judgment on the pleadings under Rule 12(c), the Court surmised that where an insider purchased stock on the same day as, and two weeks after, Primedia's board approved a sale of assets, and Primedia publicly announced the sale more than a month later, such a complaint would likely survive a 12(b)(6) motion to dismiss. 2013 WL 6797114, at *12, 14.

However, such facts are absent here. Plaintiff did not allege facts indicating culpable conduct or that the timing of the sales was suspicious. *Cf. id*. at *14 (the purchase of stock "[was] timed conveniently to occur just before the public announcement of the [sale]"). The second element requires culpable conduct, not

44

mere knowledge.[29] Having failed to make more than conclusory allegations as to the second element for a *Brophy* claim, Plaintiff's insider trading claim should be dismissed for the reason that it fails to state a claim.

## IV.
## LEAVE TO AMEND

Plaintiff requests that, if the Court dismisses any of his claims, he be granted leave to amend. ECF No. 30 at 33. Plaintiff argues that if his demand futility allegations are found to be inadequate, he can obtain books and records through an inspection demand under 8 Del. Code § 220. *Id.*

### A. Legal Standard For Leave To Amend.

"When a plaintiff's complaint fails to state a claim, the court should generally give the plaintiff at least one chance to amend the complaint under Rule 15(a) before dismissing the action with prejudice" unless it is clear the defects are incurable. *Freuler*, 803 F. Supp. 2d at 635 (citing *Great Plains Trust Co. v. Morgan Stanley*

---

[29] Defendants also contend that Plaintiff's insider trading claim as to Mr. Poppe is particularly weak because his sale was purportedly made under a SEC Rule 10b5-1 plan. ECF No. 29 at 30 (citing ECF No. 1 at ¶ 125 n.3). Defendants explain that "[t]hese plans allow officers, directors, or other insiders who regularly possess material, non-public information to buy or sell stock according to preset prices, dates, or other non-discretionary means." *Id.* (citing 17 C.F.R. § 240.10b5-1). Defendants also cite cases that indicate sales made under such plans do not raise a strong inference of scienter, although these were not analyzing whether an insider trading claim survives a Rule 12(b)(6) motion. *Id.* (citing *Metzler Inv. GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049, 1067 n.11 (9th Cir. 2008); *In re IAC/InterActiveCorp Sec. Litig.*, 478 F. Supp. 2d 574, 604 (S.D.N.Y. 2007)). Despite acknowledging Mr. Poppe's sale was made under such a plan, Plaintiff only makes conclusory allegations that "his sales are highly suspicious in terms of volume and timing especially in light of the fact that he did not sell any Conn's shares at any time before the Relevant Period." ECF No. 1 at ¶ 125 n.3.

*Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002)); *see also King v. Terwilliger*, No. H-12-2182, 2013 WL 708495, at *7 (S.D. Tex. Feb. 26, 2013) (granting leave to amend in shareholder derivative suit). A court has discretion to grant leave to amend and may consider "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, and futility of amendment." *Id.* (quoting *Wimm v. Jack Eckerd Corp.*, 3 F.3d 137, 139 (5th Cir. 1993)).

### B. Defendants Contend Amendment Would Be Futile.

Defendants allege that Plaintiff should be denied any opportunity to amend the complaint based on two grounds. First, Defendants contend any Section 220 demand for books and records would be denied due to being filed long after Plaintiff filed this lawsuit. ECF No. 31 at 14 (citing *La. Mun. Police Emps.' Ret. Sys. v. Pyott*, 46 A.3d 313, 342-44 n.23 (Del. Ch. 2012) (noting derivative claims are routinely denied "where the plaintiffs have not first used Section 220 to obtain books and records")). However, the case cited by Defendants does not go so far as to say dismissal with prejudice is mandatory or that derivative suits can never be filed before a books and records demand is made.

To the contrary, the Delaware Supreme Court has recognized that while grossly inefficient, derivative plaintiffs may make a books and records demand after filing a derivative lawsuit, provided that the suit was dismissed without prejudice

and the plaintiff was granted leave to amend. *See King v. VeriFone Holdings, Inc.*, 12 A.3d 1140, 1145 (Del. 2011) (A "bright line rule barring stockholder-plaintiffs from pursuing inspection relief under 8 Del. C. § 220 solely because they filed a derivative action first, does not comport with existing Delaware law or sound policy.") (collecting cases where stockholder-plaintiffs filed derivative suits first and were later permitted to make books and records demands to replead their derivative complaints). Shareholders may only obtain inspection relief if they have a proper purpose for making such a demand. *Id.* at 1145. The Delaware Supreme Court recognized "it is a proper purpose under Section 220 to inspect books and records that would aid the plaintiff in pleading demand futility in a to-be-amended complaint in a plenary derivative action, where the earlier-filed plenary complaint was dismissed on demand futility-related grounds without prejudice and with leave to amend." *Id*. at 1150. Thus, a Section 220 demand would likely not be denied.

While Plaintiff's decision to file a derivative suit before making a demand for books and records to ensure the complaint would withstand Rule 23.1 scrutiny was ill-advised and expended a substantial amount of judicial resources, he may be able to cure the deficiencies after making a books and records demand. *See, e.g.*, *In re Verifone Holdings, Inc. S'holder Deriv. Litig.*, No. C-07-6347, 2009 WL 1458233, at *13 (N.D. Cal. May 26, 2009) (granting leave to amend in shareholder derivative suit because plaintiffs could make a Section 220 demand under Delaware law to

assert additional particularized facts). Therefore, amendment would not be futile.

### C. Defendants Contend Plaintiff Was Dilatory.

Defendants also argue that leave to amend should be denied because Plaintiff waited more than four years to request such relief. ECF No. 31 at 14. However, this case was stayed for about four years pending the outcome of the related securities class action so this argument lacks merit.[30] Plaintiff timely requested the appropriate relief in his brief in opposition to Defendants' motion to dismiss after the stay was lifted. Furthermore, the operative complaint is still the original complaint.

Plaintiff should be granted at least one opportunity to amend the complaint after making a Section 220 demand for books and records, to the extent Plaintiff still needs other documents he has not already received through discovery.[31] The Court recommends that Plaintiff be granted leave to amend until July 19, 2019, providing Plaintiff with the agreed amount of time to review documents relevant to amending the complaint. Plaintiff should be ordered to notify the Court if he can satisfactorily amend the complaint based on documents Defendants recently produced or still

---

[30] The complaint was first filed on December 1, 2014. ECF No. 1. The case was stayed soon thereafter on January 30, 2015. ECF No. 18. Despite the stay being in place, Defendants were ordered to file any motion to dismiss by November 1, 2018. The Court held a scheduling conference on February 6, 2019, after which the stay was lifted.

[31] While this motion was pending, the parties jointly filed an agreed motion to extend Plaintiff's deadline to amend the pleadings from May 3, 2019 to July 19, 2019 on the basis that the parties began engaging in discovery and exchanged documents. ECF No. 39. The Defendants produced approximately 837,750 pages of documents to the Plaintiff. *Id*. at ¶¶ 18-19.

needs to make a Section 220 demand, in which case  Plaintiff may request that the action be stayed.

In the latter case, the action should be stayed so that, if the Corporation "refuses to permit an inspection sought by a stockholder … or does not reply to the demand within 5 business days after the demand has been made, the stockholder may apply to the Court of Chancery for an order to compel such inspection" as authorized by 8 Del. Code § 220. *See, e.g.*, *Oswald v. Humphreys*, No. C16-241, 2016 WL 6582025, at *4 (N.D. Cal. Nov. 7, 2016) (granting motion to dismiss shareholder derivative complaint without prejudice and with leave to amend and staying case so plaintiff can make a Section 220 demand). If the case is stayed, Plaintiff should be required to file a status report every 30 days updating the Court on the status of a Section 220 demand and his intent to file an amended complaint. *See, e.g.*, *In re Johnson & Johnson Deriv. Litig.*, 865 F. Supp. 2d 545, 581 (D.N.J. 2011) (granting motion to dismiss shareholder derivative complaint without prejudice and with leave to amend so plaintiff can make a Section 220 demand); Order, *In re Johnson & Johnson Deriv. Litig.*, No. 2:11-CV-2919 (D.N.J. Nov. 29, 2011), ECF No. 27 (ordering plaintiff to file a status report every 30 days on status of Section 220 process and intent to file amended complaint).

# V.
## CONCLUSION

The Court recommends the following:

1. Defendants' motion to dismiss should be granted.

2. Plaintiff's complaint should be dismissed without prejudice and Plaintiff should be granted leave to amend by July 19, 2019.

3. Plaintiff should be ordered to notify the Court, no later than July 1, 2019:

    a. whether he will amend the complaint based on documents Defendants recently produced, or

    b. whether he intends to make a Section 220 demand, and

    c. whether he needs a stay for the company to respond to his demand.

4. If Plaintiff intends to make a Section 220 demand and requests a stay,

    a. this action should be stayed, and

    b. Plaintiff should be required to file a status report with the Court every 30 days after the stay is entered.

**The Parties have fourteen days from service of this Report and Recommendation to file written objections. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). Failure to file timely objections will preclude review of factual findings or legal conclusions, except for plain error.** *Quinn v. Guerrero*, **863 F.3d 353, 358 (5th Cir. 2017).**

Signed at Houston, Texas, on May 29, 2019.


_____
Dena Hanovice Palermo
United States Magistrate Judge