## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| ROBERT HACK, derivatively on behalf of CONN'S, INC., | § § § | |
| *Plaintiff*, | § § | |
| v. | § § | |
| THEODORE M. WRIGHT, BOB L. MARTIN, JON E.M. JACOBY, KELLY M. MALSON, DOUGLAS H. MARTIN, DAVID SCHOFMAN, SCOTT L. THOMPSON, BRIAN TAYLOR, and MICHAEL J. POPPE, | § § § § § § § | No. 4:14-CV-3442 |
| *Defendants*, | § § § | |
| - and - | § § | |
| CONN'S, INC., | § § | |
| *Nominal Defendant.* | § § | |

## REPORT AND RECOMMENDATION
## ON DEFENDANTS' SECOND MOTION TO DISMISS

On December 1, 2014, Plaintiff Robert Hack ("Plaintiff") filed this

shareholder derivative action against Defendants Theodore Wright, Bob Martin, Jon

Jacoby, Kelly Malson, Douglas Martin, David Schofman, Scott Thompson, Brian

Taylor, and Michael Poppe (collectively "Individual Defendants"), as well as against

Conn's, Inc. ("Conn's") as a nominal Defendant, alleging, *inter alia*, breaches of

fiduciary duty and insider trading. ECF No. 1. Defendants moved to dismiss the complaint for failure to state a claim under Rule 12(b)(6) and failure to adequately plead demand futility under Rule 23.1. ECF No. 29. On May 29, 2019, this Court issued a Report and Recommendation ("May 2019 R&R") recommending the claims be dismissed and Plaintiff be given leave to amend. ECF No. 40. The District Judge assigned to the case adopted the R&R in its entirety, ECF No. 45, and Plaintiff filed an amended complaint on July 19, 2019, ECF No. 49. Pending before the Court is Defendants' motion to dismiss the amended complaint for failure to plead demand futility under Rule 23.1. ECF Nos. 66 & 67.[1] The Court held several conferences during which Counsel for both sides presented their positions.[2] Based on a careful review of the pleadings, motions, and argument of Counsel, the Court recommends that Defendants' motion be DENIED as to the breach of fiduciary duty claims, and GRANTED as to the insider trading claims. The Court also recommends that Plaintiff be given a final opportunity to amend but narrowly tailored.

## I.      BACKGROUND

Because the Court went into detail about the underlying facts of this case in its May 2019 R&R, only the most relevant facts are described below.

---

[1] On July 3, 2019, the District Judge to whom this case is assigned referred all potentially dispositive motions to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B). ECF No. 44.

[2] *See* ECF No. 78 (Aug. 13, 2019 Hr'g); ECF No. 82 (Nov. 5, 2019 Hr'g); ECF No. 97 (Jan. 15, 2020 Hr'g).

## A. The Original Complaint

Plaintiff—a shareholder of Conn's—filed this derivative action on behalf of Conn's, a corporation that sells household appliances in retail stores across the country and also has a credit arm of its business, providing in-house credit options, third-party financing programs, and third-party rent-to-own payment plans to its customers. ECF No. 1 ¶¶ 16, 29, 55. Seven of the Individual Defendants were members of Conn's eight-member Board of Directors between April 3, 2013 and the commencement of the lawsuit (the "Relevant Period"),[3] during which Plaintiff alleged they made or approved misleading statements to the public regarding the corporation's changes in underwriting standards and the impact on financial performance. *Id.* ¶¶ 1-2, 6-7.

Specifically, Plaintiff alleged that "all members of the Board knew that Conn's lowered its underwriting standards and offered credit lines to customers who lacked creditworthiness, as a strategy to generate revenue." *Id*. ¶ 2. However, according to Plaintiff, all Board members knew that this strategy weakened Conn's portfolio quality and increased delinquency and charge-off rates in its credit segment. *Id*. ¶¶ 2, 71, 83. Plaintiff alleged that the Board knowingly approved false

---

[3] These seven Individual Defendants include: Theodore Wright ("Wright"), Douglas Martin ("D. Martin"), Bob Martin ("B. Martin"), Jon Jacoby ("Jacoby"), Kelly Malson ("Malson"), David Schofman ("Schofman"), and Scott Thompson ("Thompson"). ECF No. 1 ¶¶ 6, 17-23. The other two Individual Defendants, Brian Taylor ("Taylor") and Michael Poppe ("Poppe"), were executive officers not on the Board. *Id.* ¶¶ 26-27.

and misleading public statements—in the form of press releases, annual and quarterly reports, and statements during conference calls—that misrepresented the underwriting policy changes, overstated the financial condition of the corporation, and falsely attributed financial problems to reasons other than the lower underwriting standards. *Id.* ¶¶ 2, 58-123.

Plaintiff also alleged that the false and misleading information presented to the public artificially inflated Conn's stock prices during the Relevant Period. ECF No. 1 ¶ 3. Plaintiff alleged that five of the Individual Defendants, including four that were Board members during the Relevant Period,[4] sold over 1.3 million shares of Conn's stock for over $66 million on the basis of material non-public information about Conn's true financial condition. *Id.* ¶¶ 4, 124-126.

According to Plaintiff, the reality of Conn's financial performance was revealed in February 2014, when Conn's made public announcements that the bad debts in its credit segment exceeded its previously issued guidance and it expected earnings per share dilution in 2015. *Id.* ¶¶ 118-120. Several analysts subsequently released reports that these problems were caused by internal issues within Conn's, rather than the external or environmental factors that Conn's had attempted to blame, and the price per share of Conn's stock fell 42.85%. *Id.* ¶¶ 121-123. As a result, Plaintiff brought claims for breach of fiduciary duty, unjust enrichment, gross

---

[4] These four Board members include: Wright, Jacoby, D. Martin, and Thompson. *Id.* ¶ 4.

mismanagement, and insider trading. *Id.* ¶¶ 168-190.[5]

### B.  The May 2019 R&R

Defendants moved to dismiss Plaintiff's original complaint for failure to plead demand futility under Rule 23.1 and failure to state a claim under Rule 12(b)(6). ECF No. 29. In its 51-page R&R—which the District Judge adopted in full—this Court recommended Defendants' motion be granted under Rule 23.1 and granted in part under Rule 12(b)(6). ECF No. 40.

In its demand futility analysis, this Court found that demand should not be excused because Plaintiff did not adequately plead that at least four of the eight Board members at the time the suit was filed faced a substantial likelihood of liability. As to the breach of fiduciary duty, unjust enrichment, and gross mismanagement claims, the Court found Plaintiff's allegations insufficient to excuse demand because Plaintiff failed to plead particular facts demonstrating scienter, such as how, when, and from whom the Defendants obtained knowledge upon which they knowingly violated duties of loyalty and good faith. *Id.* at 28. As to the insider trading claims, the Court found Plaintiff's allegations did not show a substantial likelihood of liability because they failed to allege what material information the Directors knew and how they knew it, and did not explain how the timing of the

---

[5] This case shares a common factual background with a securities class action against Conn's, which has settled. *See In re Conn's, Inc. Sec. Litig.*, No. 14-CV-548 (S.D. Tex.).

sales might raise an inference of insider trading. *Id.* at 31-35.

As a result, Plaintiff was not excused from making a demand on the Board under Rule 23.1 regarding any of his claims, and the original complaint was dismissed without prejudice.

## C. The Amended Complaint

Plaintiff's amended complaint, filed July 19, 2019, asserts the same causes of action against the same defendants as the original complaint. ECF No. 49 ¶¶ 192-214. However, there are several notable differences.

First, the composition of Conn's eight-member Board has changed. *Id.* ¶ 7. When the original complaint was filed in December 2014, seven of the Individual Defendants alleged to have engaged in wrongdoing were members of the Board. *Id.* When the amended complaint was filed in July 2019, only four of these Individual Defendants—B. Martin, Malson, D. Martin, and Schofman—remained on the Board. *Id.* Plaintiff's amended complaint does not make any demand futility or substantive allegations against the four new Board members.

Second, Plaintiff added the following detail as to when and how the Board received information on Conn's underwriting changes and collections issues:

(1) <u>November 2012 Email</u>: Poppe, Conn's Chief Operating Officer, received an email from the president of the credit division indicating there would be changes to the underwriting standards—namely, an increase in auto decisions for applicants from 50 to 85%. ECF No. 49 ¶ 60. The email chain contains a response from a FICO consultant, who warned an 85% approval rate was "very aggressive" and recommended it be lowered. *Id.*

(2) <u>March 2013 Board Meeting</u>: The Board held a meeting on March 25 and 26, 2013, which all Individual Defendants attended. *Id.* ¶ 61. Poppe presented information on Conn's credit activities, such as collections and underwriting updates. *Id.* ¶ 62.

(3) <u>May 2013 Memo</u>: Wright, Conn's Chief Executive Officer and a Board member, sent the Board a memo stating collections performance was suffering, particularly at new stores, because the corporation had been "too aggressive." *Id.* ¶ 78.

(4) <u>June 2013 Board Meeting</u>: The Board held a meeting on June 4, 2013, which all Individual Defendants attended. ECF No. 49 ¶ 79. Poppe presented updates on credit operations, including on the "new credit origination model as implemented in new markets"—what Plaintiff alleges caused damage to Conn's and was concealed from the public. *Id.* The Board approved Conn's Form 10-Q and earnings release. *Id.* ¶ 80.

(5) <u>July 2013 Memo</u>: Wright sent the Board a memo indicating that the corporation had "more than [its] fair share of stumbles in June," particularly that the underwriting team had been overwhelmed with phone applications, the collections department was struggling after a system conversion, and "delinquency and charge-off results [were] not meeting plan." *Id.* ¶¶ 96-97.

(6) <u>August 2013 Board Meeting</u>: The Board held a meeting on August 27, 2013, which all Individual Defendants attended. *Id.* ¶¶ 100-101. Poppe presented updates on collections and underwriting policies and indicated management was reviewing data on the corporation's charge-off policy. *Id.* ¶ 101. Poppe also led a discussion regarding increased allowance for bad debts and related issues. *Id.*

(7) <u>December 2013 Board Meeting</u>: The Board held a meeting on December 3, 2013, which all Individual Defendants attended. ECF No. 49 ¶ 120. Poppe told the Board that Conn's had raised minimum FICO scores during the third quarter—what Plaintiff alleges was a "belated attempt to correct the deficiencies of the changed credit underwriting policy." *Id.* The Board also received the Third Quarter Fiscal 2014 Financial Review ("Third Quarter Review"), which reported: (a) credit segment income was down $1.1 million from the prior year quarter; (b) there was a $9.3 million

increase in provision for bad debts and collection costs; (c) there was a 38% increase in the average outstanding balance and a 63% increase in loan originations; and (d) customer portfolio balances greater than 60-day delinquent was 8.5%, up from 7% for the previous year. *Id.* ¶ 121.[6]

(8) <u>February 2014 Board Meeting</u>: The Board held a meeting on February 13, 2014, which all Individual Defendants attended. ECF No. 49 ¶ 136. Wright noted that delinquency had increased in the credit segment and that "all levels of origination were experiencing some level of deterioration." *Id.* He also stated that credit performance did not meet expectations. *Id.* ¶ 137. Wright circulated a memo explaining the attempts to cure these problems by increasing FICO score limits, decreasing lending limits, and introducing other restrictions. *Id.* ¶¶ 138-139.[7]

The central issue before the Court is whether the amended complaint contains sufficient particularized facts alleging that at least four members of Conn's current Board face a substantial likelihood of liability for disseminating false information and engaging in insider trading, thereby excusing demand on the Board.

## II.   LEGAL STANDARDS

### A. Demand Futility Under Rule 23.1

Federal Rule of Civil Procedure 23.1 requires a shareholder derivative complaint to state with particularity "(A) any effort by the plaintiff to obtain the

---

[6] The Board also received two other pertinent documents at this meeting: (1) the Fourth Quarter Fiscal 2014 Financial Review ("Fourth Quarter Review"), which reported similar financial metrics as the Third Quarter Review; and (2) an Executive Summary that stated underwriting policy changes had resulted in higher delinquency and charge-off rates because "new customers [had] not demonstrated their intent or ability to pay Conn's." ECF No. 49 ¶¶ 122-123.

[7] The amended complaint also adds detail from Board meetings in late February, March, and May 2014—after Plaintiff alleges the truth of Conn's underwriting policies and rising delinquencies was revealed. *Id.* ¶¶ 148-150.

desired action from the directors or comparable authority and, if necessary, from the shareholders or members; and (B) the reasons for not obtaining the action or not making the effort." FED. R. CIV. P. 23.1(b)(3). Because Rule 23.1 does not identify substantive standards, "the particularity of a plaintiff's pleadings is governed by the standards of the state of incorporation." *Freuler v. Parker*, 803 F. Supp. 2d 630, 636 (S.D. Tex. 2011), *aff'd*, 517 F. App'x 227 (5th Cir. 2013). Conn's is incorporated in Delaware, and thus Delaware law applies.

Under Delaware law, a stockholder may only pursue a derivative suit if "the stockholder: (a) has first demanded that the directors pursue the corporate claim and the directors have wrongfully refused to do so; or (b) establishes that pre-suit demand is excused because the directors are deemed incapable of making an impartial decision regarding the pursuit of the litigation." *Van der Gracht de Rommerswael ex rel. Rent-A-Center, Inc. v. Speese*, No. 17-CV-227, 2017 WL 9280071, at *7 (E.D. Tex. Aug. 11, 2017) (quotations omitted), *report and recommendation adopted*, 2017 WL 4545929 (Oct. 12, 2017).[8] Where a plaintiff does not make a pre-suit demand, the complaint must allege with particularity that a majority of the board—or at least half of the board when there is an even number of

---

[8] This is because when a corporation suffers harm, the board of directors is entitled to decide what remedial action to take. *Van der Gracht*, 2017 WL 9280071, at *6. "In a stockholder derivative suit, a stockholder pursues a cause of action that belongs to the corporation." *Freuler*, 803 F. Supp. 2d at 636 (citing *Aronson v. Lewis*, 473 A.2d 805, 811 (Del. 1984)).

directors—was "incapable of considering demand" as to each claim alleged. *In re INFOUSA, Inc. S'holder Litig.*, 953 A.2d 963, 989-90 (Del. Ch. 2007); *see Taylor v. Kissner*, 893 F. Supp. 2d 659, 666 (D. Del. 2012) ("[D]emand futility must be determined on a claim-by-claim basis."). In cases where the initial pleadings have been amended to add claims not already in litigation, as here, the court will consider the composition of the board at the time the amended complaint was filed. *Braddock v. Zimmerman*, 906 A.2d 776, 786 (Del. 2006).

### B. The *Aronson* and *Rales* Tests

The Delaware Supreme Court has established two tests—known as the *Aronson* and *Rales* tests—to determine whether a plaintiff has adequately pled demand futility. *Van der Gracht*, 2017 WL 9280071, at *14; *see Rales v. Blasband*, 634 A.2d 927 (Del. 1993); *Aronson v. Lewis*, 473 A.2d 805 (Del. 1984), *overruled on other grounds by Brehm v. Eisner*, 746 A.2d 244 (Del. 2000).

The *Aronson* test applies when a plaintiff challenges a board decision or transaction "made by the same directors who remain in office at the time suit is filed." *In re China Agritech, Inc. S'holder Derivative Litig.*, No. 7163-VCL, 2013 WL 2181514, at *15 (Del. Ch. May 21, 2013). To determine demand futility under *Aronson*, the court must determine "whether, under the particularized facts alleged, a reasonable doubt is created that: (1) the directors are disinterested and independent [or] (2) the challenged transaction was otherwise the product of a valid exercise of

business judgment." *Aronson*, 473 A.2d at 814. On the other hand, the *Rales* test applies when a plaintiff does not challenge a decision of the board or when the plaintiff challenges a board decision but a majority of directors making the decision have been replaced. *Rales*, 634 A.2d at 934. Under the *Rales* test, "a court must determine whether or not the particularized factual allegations of a derivative stockholder complaint create a reasonable doubt that, as of the time the complaint is filed, the board of directors could have properly exercised its independent and disinterested business judgment in responding to a demand." *Id.*

While there are differences in how and when the two tests are applied, they are, in effect, "complementary versions of the same inquiry." *In re China Agritech*, 2013 WL 2181514, at *16; *see Guttman v. Huang*, 823 A.2d 492, 500-01 (Del. Ch. 2003) ("[T]he differences between the *Rales* and the *Aronson* tests in the circumstances of this case are only subtly different[.] . . . [The *Rales*] inquiry makes germane all of the concerns relevant to both the first and second prongs of *Aronson*."). "[U]nder either *Aronson* or *Rales*, the question here is the same: Does the Complaint adequately allege that [at least half of the] board faces a substantial likelihood of liability[?]" *Ellis v. Gonzalez*, No. 17-CV-342, 2018 WL 3360816, at *6 (Del. Ch. July 10, 2018), *aff'd*, 205 A.3d 821 (Del. 2019).

### C. Other Considerations

In deciding a motion to dismiss, a court may rely on the complaint,

"'documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.'" *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008) (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)); *accord Goldfarb ex rel. Pain Therapeutics, Inc. v. Barbier*, No. 11-CA-1102, 2012 WL 13028298, at *8 n.7 (W.D. Tex. Apr. 26, 2012) (applying this principle to a motion to dismiss under Rule 23.1); *Marron ex rel. Stewart & Stevenson Servs., Inc. v. Ream*, No. 06-CV-1394, 2006 WL 2734267, at *2 (S.D. Tex. May 5, 2006) (same). A court may take judicial notice of documents such as SEC filings and certificates of incorporation. *Fin. Acquisition Partners LP v. Blackwell*, 440 F.3d 278, 286 (5th Cir. 2006) (SEC filings); *Van der Gracht*, 2017 WL 9280071, at *16 (certificates of incorporation).

Conn's certificate of incorporation eliminates director liability for breaches of duty of care but not breaches of duty of loyalty, acts of bad faith or knowing violations of law, or transactions that lead to improper personal benefit. ECF No. 67, Ex. 8 at 4-5 (Article 8). In other words, it exculpates Directors from liability to the extent authorized by 8 Del. Code § 102(b)(7). *See Van der Gracht*, 2017 WL 9280071, at *16. "Where directors are protected by an exculpatory provision of the sort authorized by 8 Del. Ch. § 102(b)(7), the risk of liability is diminished; as a consequence, to excuse demand the complaint must contain particularized allegations of facts which allow the court to conclude there is a substantial likelihood

the challenged conduct falls outside the exemption." *Id.*

The dissemination of misleading information could violate the fiduciary duties of care, loyalty, *or* good faith under Delaware law, and the Directors here could be exculpated as to those allegations if they are considered breaches of the duty of care only. *See Malone v. Brincat*, 722 A.2d 5, 11-12 (Del. 1998). To plead conduct that falls outside the exculpatory clause, therefore, Plaintiff must "plead particularized facts that demonstrate that the directors acted with scienter, *i.e.*, that they had actual or constructive knowledge that their conduct was legally improper." *Van der Gracht*, 2017 WL 9280071, at *17 (quotations omitted); *see Ellis*, 2018 WL 3360816, at *5 ("Because [the corporation's] charter contains a Section 102(b)(7) exculpatory provision, the Plaintiff here cannot establish demand futility based on his disclosure claims unless he pleads particularized factual allegations that support the inference that the disclosure violations were made in *bad faith, knowingly or intentionally*.") (quotations and alterations omitted).

Even with this heightened standard, however, a plaintiff "'need not plead evidence.'" *Van der Gracht*, 2017 WL 9280071, at *7 (quoting *Aronson*, 473 A.2d at 816). "The well-pleaded factual allegations of the derivative complaint are accepted as true," and the plaintiff "is entitled to all reasonable inferences [that] logically flow from particularized facts." *Id.* (quotations omitted).

III. **PLAINTIFF'S BREACH OF FIDUCIARY DUTY CLAIMS SURVIVE UNDER RULE 23.1, WHILE THE INSIDER TRADING CLAIMS MUST BE DISMISSED.**

In light of the above, the Court focuses its demand futility analysis on whether Plaintiff has pled particularized facts that the four current Directors alleged to have engaged in wrongdoing—B. Martin, D. Martin, Malson, and Schofman—face a substantial likelihood of liability as to each claim. The Court finds that Plaintiff has adequately pled demand futility as to his breach of fiduciary duty claims but has failed to do so for insider trading claims.

### A. Plaintiff Has Adequately Alleged Half Of Conn's Board Knowingly Breached Their Fiduciary Duties By Disseminating False And Misleading Information.

Defendants argue the amended complaint does not contain particularized facts as to scienter, such as how, when, and from whom the Directors gained knowledge that caused them to knowingly mislead the public. ECF No. 66 at 1-2. Instead, Defendants argue the amended complaint simply adds "generic summaries" from Board meetings, mischaracterizes the materials presented to the Board, and relies on unfair inferences about what the Board knew. *Id* at 7-19. In response, Plaintiff argues the amended complaint adds sufficient detail, including meeting minutes from March 2013 to May 2014, that show the Board members "knew that changes in the credit underwriting policies and practices had caused a material increase in delinquencies and charge-offs." ECF No. 70 at 6. Plaintiff also argues that he is not

required to plead evidence at this stage or refute factual disputes raised by Defendants. *Id.* at 20. The Court agrees with Plaintiff.

## 1. The amended complaint contains sufficient detail as to what the Board members knew and how they knew it.

Plaintiff has added sufficient detail as to how, when, and from whom B. Martin, D. Martin, Malson, and Schofman learned that Conn's underwriting changes were causing financial problems for the corporation. As described above, Plaintiff's amended complaint alleges Defendant Poppe knew of the changes in underwriting standards as of November 2012 and was warned by a FICO consultant that the changes were "very aggressive." ECF No. 49 ¶ 60. Poppe then made several presentations at Board meetings, which B. Martin, D. Martin, Malson, and Schofman attended, regarding these changes and how they were affecting the corporation. *See id.* ¶¶ 61-62 (Mar. 2013 Meeting); ¶¶ 79-80 (June 2013 Meeting); ¶¶ 100-101 (Aug. 2013 Meeting); ¶¶ 120-123 (Dec. 2013 Meeting).

Specifically, at the June 2013 Board meeting, Plaintiff alleges Poppe discussed Conn's "new credit origination model as implemented in new markets." *Id.* ¶ 79. At the August 2013 Board meeting, Plaintiff alleges Poppe: (1) led a discussion on the "increased allowance for bad debts . . . and the issues surrounding such an increase;" (2) presented information on Conn's credit activities, "including collections and underwriting policies;" and (3) "advised the Board that management was reviewing data relating to [Conn's] charge off policy." *Id.* ¶ 101. At the

December 2013 Board meeting, Plaintiff alleges Poppe presented a report on Conn's underwriting policies and notified the Board that the corporation had raised minimum FICO scores. *Id.* ¶ 120.[9]

While it is true the Court is still required to make some inferences from the information Directors received at these meetings, it can be inferred that Poppe knew of the risks and problems associated with changes in underwriting policy and passed the information to the Board during his many discussions on the topic.[10] *See, e.g.*, *Rosenbloom v. Pyott*, 765 F.3d 1137, 1141, 1153 (9th Cir. 2014) (finding it not only reasonable, but also necessary, to infer the board knew the corporation was illegally promoting off-brand use of medication from board discussions, data presented to the board linking sales programs to off-label sales, and repeated FDA warnings of illegal promotion); *Oswald v. Identiv, Inc.*, No. 16-CV-241, 2017 WL 4877423, at *9-11 (N.D. Cal. Oct. 27, 2017) (inferring the requisite knowledge of the board to establish bad faith from discussions that occurred at board meetings and other material

---

[9] Wright also provided information to the Board about Conn's financial issues. *See* ECF No. 49 ¶ 78 (May 2013 Memo); ¶¶ 96-97 (July 2013 Memo); ¶¶ 136-139 (Feb. 2014 Meeting and Memo).

[10] Relying on *Towers v. Iger*, No. 15-CV-4609, 2017 WL 6044035 (N.D. Cal. Mar. 10, 2017), *aff'd*, 912 F.3d 523 (9th Cir. 2018), Defendants argue the Court is not permitted to make this inference. ECF No. 66 at 13. In *Towers*, the Court declined to infer that knowledge of illegal hiring practices was communicated to board members at meetings and during presentations to the board. *Towers*, 2017 WL 6044035, at *6-8. However, the court there noted that the board minutes were "unremarkable" and that discussions only "tangentially relate[d] to the unlawful conduct." *Id.* at *7-8. Here, on the other hand, the minutes and other materials demonstrate the Board discussed information directly related to the misconduct at issue in this case.

presented to the board). Meanwhile, the Board made or approved several public statements that Plaintiff alleges were false and misleading. ECF No. 49 ¶ 64 (Apr. 2013 Press Release); ¶¶ 80 & 88 (June 2013 Form 10-Q); ¶ 102 (Sept. 2013 Press Release); ¶ 108 (Sept. 2013 Form 10-Q); ¶ 125 (Dec. 2013 Press Release); ¶ 131 (Dec. 2013 Form 10-Q).[11] Plaintiff has therefore, pled particularized facts as to the knowledge and involvement of the Directors in question.[12]

---

[11] Defendants do not dispute that, as members of the Board, B. Martin, D. Martin, Malson, and Schofman were involved in disseminating these statements. Defendants do, however, argue that the Board materials discussed above "cannot support Plaintiff's efforts to excuse demand because they are not directly related to the 13 alleged misstatements that survived dismissal in the Securities Class Action." ECF No. 66 at 11. It is true that the allegedly misleading statements stricken from the related securities class action cannot be used to excuse demand here, as the Court found in its May 2019 R&R. ECF No. 40 at 25 n.17; *see In re Yahoo! Inc. S'holder Derivative Litig.*, 153 F. Supp. 3d 1107, 1120 (N.D. Cal. 2015) (not excusing demand where plaintiffs challenged the same statements stricken in the class action). However, Defendants do not identify which statements in the amended complaint overlap with the securities class action, which statements were stricken and which survived in the class action, or whether Plaintiff is currently asserting additional misstatements that were not at issue in the class action. Moreover, they do not explain *how* materials presented to the Board fail to relate to the statements that did survive in the class action, aside from one cursory example. It is not the Court's burden to fill these gaps. In any event, at least some of the misstatements at issue here survived in the class action. *See* Order, *In re Conn's*, No. 14-CV-548 (S.D. Tex. May 5, 2016), ECF No. 125.

[12] Plaintiff's reliance on the core product doctrine and Conn's relationship with Stephens, Inc. to excuse demand is misplaced, as the Court found in its May 2019 R&R. ECF No. 40 at 20-23, 25. The core product doctrine cannot be used to excuse demand under Delaware law. *See In re Rocket Fuel Inc. Derivative Litig.*, No. 15-CV-4625, 2016 WL 4492582, at *6 (N.D. Cal. Aug. 26, 2016); *In re Yahoo!*, 153 F. Supp. 3d at 1123 n.10 (noting the core operations doctrine has "no application in derivative litigation"). Likewise, Plaintiff's amended complaint still contains no allegations that assert a nexus between Stephens, Inc. and the alleged misconduct in this case. Demand futility, therefore, cannot be established on these bases.

### 2. Defendants' attempt to nitpick the amended complaint fails to consider Plaintiff's allegations as a whole and is otherwise inappropriate at this stage.

Defendants make several detailed arguments to convince the Court that Plaintiff has not met his pleading burden. These arguments ignore the big picture and settled principles of a motion to dismiss, even one involving heightened pleading standards.

First, Defendants take issue with how Plaintiff construes the June 2013 Board meeting, particularly whether the minutes demonstrate Poppe made a presentation on the new credit origination model or whether he agreed to do so at the next meeting. ECF No. 66 at 13-14. It is true the meeting minutes are poorly worded. *See* ECF No. 66, Ex. 10.[13] However, it is not unreasonable to infer that Poppe made the presentation on Conn's new credit origination model at the June 2013 meeting. The minutes reflect that Poppe discussed the corporation's credit operations, at least to an extent, at that meeting. *See id.* In any event, the Court declines to resolve conflicting interpretations of Board minutes at the motion to dismiss stage.

---

[13] The June 2013 Board Minutes state:

> Mr. Poppe discussed with the Board the Company's Credit operations, as per material contained in Board records, and agreed to present to the next Board meeting a detailed proposal/action plan to remove RAC from the Company's operations, and to streamline the GE Credit process, and the new credit origination model as implemented in new markets.

ECF No. 66, Ex. 10.

Second, Defendants argue that the information provided to the Board was also publicly disclosed, and thus the Board could not have knowingly misled the public. In making this argument, Defendants ask the Court to compare the allegations in the amended complaint with what was publicly disclosed. ECF No. 66 at 15-19. For example, Defendants argue Conn's disclosed the information on bad debt and increased delinquency from its Third Quarter Review in its December 5, 2013 Form 8-K and its December 6, 2013 Form 10-Q. *Id.* at 16 n.13; *see* ECF No. 67, Exs. 2 (Form 10-Q) & 3 (Form 8-K). It is true that these SEC filings alerted the public to the financial metrics contained in the Third Quarter Review.[14] However, Plaintiff does not simply allege the Board misled the public as to Conn's financial situation; he alleges the Board misled the public as to the *cause* of the financial struggles and how they were connected to the underwriting policy changes. Therefore, the fact that some information the Board knew was also publicly disclosed does not detract from the court's findings.

Finally, Defendants argue it is unreasonable to infer the Board knew the delinquency and charge-off issues were caused by the underwriting changes rather

---

[14] *Compare* ECF No. 49 ¶ 121 (alleging the Third Quarter Review reported a decrease in credit segment operating income, increase in bad debt provision, increase in average outstanding portfolio balance, and increase in delinquency rates), *with* ECF No. 67, Ex. 2 (Form 10-Q reporting decrease in credit segment operating income, increase in bad debt provision, and increase in average outstanding portfolio balance), *and id.*, Ex. 3 (Form 8-K reporting increase in delinquency rates).

than a collections operation software conversion of which the public was aware. ECF

No. 66 at 14-15. For example, Defendants point to Wright's July 2013 Memo, which

Plaintiff alleges reported to the Board that "the collection operation [was] struggling

to get back on track after the system conversion completed in late May and other

changes to our collections operations" and that "delinquency and charge-off results

[were] not meeting plan and the challenges have continued to July." ECF No. 49

¶ 97. It is true, as Defendants contend, that the memo blames credit performance

problems on the system conversion. ECF No. 66, Ex. 13 at 3 ("As a result [of post-

conversion challenges], delinquency and charge-off results are not meeting plan and

the challenges have continued into July. . . . The portfolio performance issues are

related to our execution and not asset quality. Entry into delinquency and early stage

delinquency do not indicate issues with the portfolio quality.").

However, the amended complaint does not rest on this paragraph in isolation,

and the Court must consider Plaintiff's allegations as a whole. *Jones ex rel. CSK

Auto Corp. v. Jenkins*, 503 F. Supp. 2d 1325, 1341 (D. Ariz. 2007) ("[T]he Court

must decide whether the totality of Plaintiff's allegations demonstrate reasonable

doubt about the Board's impartiality."). The July 2013 Memo demonstrates that the

Board knew there were issues in delinquency and charge-offs, and other allegations

in the amended complaint permit the inference that the Board knew the issues were

due to underwriting changes. For example, Plaintiff alleges Wright's May 2013

Memo states that "[c]ollections are suffering from some of grand opening practices at the new stores" and that they were "too aggressive" at those stores. ECF No. 49 ¶ 78. Similarly, Plaintiff alleges Poppe discussed issues surrounding bad debts, collections and underwriting policies, and Conn's charge-off policy at the August 2013 Meeting. *Id.* ¶ 101. And, according to Plaintiff, Poppe told the Board that Conn's has raised its minimum FICO scores at the same meeting that the Board received the Third Quarter Review indicating credit segment income was down and the provision for bad debts, average outstanding balance, and delinquency rates had increased. *Id.* ¶¶ 120-121. Contrary to Defendants' contention, these allegations link Conn's underwriting policy with its financial difficulties.[15]

The inference that the Board knew the changes in Conn's underwriting policy were causing increased delinquency and charge-offs is therefore reasonable when the amended complaint is considered as a whole, and inferences are drawn in Plaintiff's favor. *See, e.g.*, *Rosenbloom*, 765 F.3d at 1153 ("Whereas Allergan argues that the Board could have viewed the increase in off-label Botox sales as the natural

---

[15] The primary case used by Defendants to argue it is unreasonable to infer bad faith by the Board, *In re Merck & Co., Inc., Derivative & ERISA Litig.*, No. 05-CV-1151, 2008 WL 2788400 (D.N.J. June 17, 2008), is distinguishable on its facts. There, the court found it improper to infer the Board knew the risks of a medication produced by the corporation because it was continuously reassured the drug was safe and studies evaluating the risks were inconclusive. *Id.* at *6-7. It is true that, here, Wright told the Board that Conn's financial troubles were due to a software conversion and other technical issues instead of changes in underwriting. However, as described above, the Board was subsequently provided with very clear indication that this was not the case. *In re Merck*, therefore, is inapposite.

operation of the medical community, at this stage of the case we must make reasonable inferences for Plaintiffs, not against them—and it is reasonable to infer that the data repeatedly presented to Allergan's board linking Allergan programs to fluctuations in off-label sales support a finding of scienter.").[16]

Plaintiff is not required to provide the Court with a "smoking gun of Board knowledge." *Id.* at 1156; *see, e.g.*, *In re DaVita Inc. S'holder Derivative Litig.*, No. 17-CV-152, 2019 WL 1855445, at *15 (D. Del. Apr. 25, 2019) ("[D]efendants suggest that the law requires smoking-gun evidence of known illegal activity in the Complaint. However, at the pleadings stage, plaintiffs do not have to point to actual confessions of illegality by defendant directors to survive a Rule 23.1 motion. Instead, a court can draw the inference of wrongful conduct when supported by particularized allegations of fact.") (quotations and alteration omitted). Likewise, "[a] plaintiff need not plead particularized facts sufficient *to sustain a judicial finding* [that directors are interested or lack independence]." *In re China Agritech*, 2013 WL 2181514, at *15 (quotations omitted). The amended complaint adds sufficient detail as to how the Board knew Conn's underwriting standards were

---

[16] *Cf. Shaev v. Baker*, No. 16-CV-5541, 2017 WL 1735573, at *13 (N.D. Cal. May 4, 2017) ("Defendants ignore the bigger picture by addressing each of these red flags in piecemeal fashion. While any of these red flags might appear relatively insignificant . . . when viewed in isolation, when viewed collectively they support an inference that a majority of the Director Defendants consciously disregarded their fiduciary duties . . . , and therefore, that there is a substantial likelihood of director oversight liability.").

causing problems and how it misled the public. Plaintiff has, therefore, sufficiently

pled demand futility as to his breach of fiduciary duty claims.[17]

> **B. Plaintiff Has Not Adequately Alleged Half Of Conn's Board Engaged In Insider Trading Or Is Otherwise Interested As To Those Claims.**

Defendants argue that only one of Conn's current Directors is alleged to have

traded improperly, and thus Plaintiff cannot show demand is excused for at least half

of the Board. ECF No. 66 at 22-23. Plaintiff does not directly address this argument

in his response. *See generally* ECF No. 70. However, in oral argument before the

Court, Plaintiff proffered that his insider trading claims—also known as *Brophy*

claims—are part of his breach of fiduciary duty claims, and thus they must survive

if the breach of fiduciary duty claims survive. ECF No. 82 at 11:10-15:5; *see also*

ECF No. 97 at 15:15-18:1. Moreover, Plaintiff argued that the Directors who were

on the Board at the time the insider trading occurred, but who did not engage in

insider trading themselves, are still interested because they "allowed their fellow

executives to trade," thereby breaching the duty of loyalty. ECF No. 82 at 13:2-7.

The Court agrees with Defendants.

---

[17] Under Delaware law, claims for unjust enrichment and gross mismanagement are considered duplicative of claims for breach of fiduciary duty. *See Friedman v. Khosrowshahi*, No. 9161, 2014 WL 3519188, at *13 (Del. Ch. July 16, 2014) (treating breach of fiduciary duty and unjust enrichment claims as the same under Rule 23.1), *aff'd*, No. 442, 2015 WL 1001009 (Del. Mar. 6, 2015); *In re Citigroup, Inc. S'holder Derivative Litig.*, 964 A.2d 106, 114 n.6 (Del. Ch. 2009) (treating breach of fiduciary duty and gross mismanagement claims as the same under Rule 23.1). Therefore, the Court need not repeat its demand futility analysis for those claims.

### 1. The Court must examine demand futility as to insider trading separately.

"Settled Delaware state law requires a claim by claim analysis in determining whether a plaintiff has met the demand exhaustion requirement." *In re BofI Holding, Inc. S'holder Litig.*, 382 F. Supp. 3d 992, 1005 (S.D. Cal. 2019); *accord Knox v. Rosenberg*, No. 99-CV-123, 1999 WL 35233291, at *6 (S.D. Tex. Sept. 28, 1999). While insider trading is considered a breach of fiduciary duty under Delaware law, *In re China Auto. Sys. Inc. Derivative Litig.*, No. 7145, 2013 WL 4672059, at *10 (Del. Ch. Aug. 30, 2013) (citing *Brophy v. Cities Serv. Co.*, 70 A.2d 5, 7-8 (Del. Ch. 1949), Plaintiff has not pled them as part of the same claim. ECF No. 49 ¶¶ 60-140 & 151-154 (separating the dissemination of false and misleading information and insider trading claims in the "substantive allegation" section of the amended complaint); *see also id.* ¶¶ 192-199 & 209-214 (designating Count I as breach of fiduciary duties and Count IV as insider trading in the "cause of action" section of the amended complaint). In fact, Plaintiff included a separate section on insider trading within his demand futility allegations. *Id.* ¶ 187 (stating demand was futile as to Wright, Jacoby, D. Martin, and Thompson—those alleged to have engaged in insider trading—because they "received a personal financial benefit"). The Court will not consider new theories regarding demand futility that are not alleged in the pleadings, *Baca ex rel. Insight Enters., Inc. v. Crown*, No. 09-CV-1283, 2010 WL

2812697, at *6 n.7 (D. Ariz. Jan. 8, 2010), and therefore the Court analyzes the insider trading claims separately.[18]

> ### 2. Plaintiff makes insider trading allegations as to only one member of Conn's current Board and thus fails to plead demand futility.

Plaintiff alleges five Individual Defendants engaged in insider trading. ECF No. 49 ¶¶ 151-154. Only one of these Defendants, D. Martin, is currently a member of the Board. *Id.* ¶ 7. Plaintiff has neither alleged, nor provided authority for his proposition that other current Board members could be interested by "allowing" some members to trade improperly. Plaintiff, therefore, has not pled particularized facts that at least four of Conn's eight-member Board are incapable of considering demand as to insider trading. *See, e.g.*, *Fosbre v. Matthews*, No. 09-CV-0467, 2010 WL 2696615, at *7 (D. Nev. July 2, 2010) (finding it unnecessary to address whether the complaint pled sufficiently particular allegations to excuse demand when plaintiff alleged that only three of the nine directors engaged in insider trading), *aff'd sub nom. Israni v. Bittman*, 473 F. App'x 548 (9th Cir. 2012). Plaintiff's insider

---

[18] Moreover, caselaw is not clear that these claims should be analyzed together. *Compare Fosbre v. Matthews*, No. 09-CV-0467, 2010 WL 2696615, at *7-8 (D. Nev. July 2, 2010) (analyzing insider trading claims separately from dissemination of false information claims under Rule 23.1), *aff'd sub nom. Israni v. Bittman*, 473 F. App'x 548 (9th Cir. 2012), *with In re Countrywide Fin. Corp. Derivative Litig.*, 554 F. Supp. 2d 1044, 1083 (C.D. Cal. 2008) (grouping insider trading and dissemination of false information allegations together, even after recognizing demand futility must be analyzed on a claim-by-claim basis). The Court declines to resolve this conflict, given that Plaintiff pled his claims separately and the issue has not been briefed.

trading claims, therefore, must be dismissed.[19]

## IV.   PLAINTIFF SHOULD BE GRANTED LEAVE TO AMEND.

Plaintiff requests leave to amend his complaint should any of his claims be dismissed. ECF No. 70 at 24-25. Defendants oppose the request as futile, arguing Plaintiff has already been given leave to amend once, significant discovery took place before Plaintiff filed the amended complaint, and Plaintiff failed to explain how he would improve the amended complaint. ECF No. 66 at 23-25; ECF No. 71 at 8-10. The Court finds Plaintiff should be given a final opportunity to amend, but leave should be narrowly tailored.

Rule 15 of the Federal Rules of Civil Procedure provides that a "court should

---

[19] Plaintiff's amended complaint also contains some language paralleling a *Caremark* claim—or a violation of oversight duties. *See In re Caremark Int'l Inc. Derivative Litig.*, 698 A.2d 959 (Del. Ch. 1996). For example, Plaintiff alleges the Audit Committee abdicated its responsibility to review Conn's public disclosures and "failed to implement adequate internal controls over the Company's financial reporting." ECF No. 49 ¶¶ 169-178. It is not clear whether Plaintiff actually intends to assert a separate *Caremark* claim or whether he is merely using these allegations to support his claims for dissemination of false information. *See Abbott Labs. Derivative S'holders Litig.*, 325 F.3d 795, 805-06 (7th Cir. 2003) (distinguishing plaintiffs' claims alleging that the directors knowingly breached their fiduciary duties from *Caremark* claims where directors are charged with "'unconsidered' failure to act" or conduct "predicated upon ignorance of liability creating activities"). Plaintiff was adamant in the first round of briefings that his original complaint did not assert a *Caremark* claim, ECF No. 30 at 17-18, and his amended complaint does not add any allegations that require a different conclusion. In any event, *Caremark* claims have "been recognized as 'possibly the most difficult theory in corporation law on which a plaintiff might hope to win a judgment,'" making it difficult for a plaintiff to plead a majority of directors face a substantial likelihood of liability under Rule 23.1. *In re Gen. Motors Co. Derivative Litig.*, No. 9627, 2015 WL 3958724, at *14 (Del. Ch. June 26, 2015) (quoting *Caremark*, 698 A.2d at 967), *aff'd*, 133 A.3d 971 (Del. 2016). Plaintiff's sporadic and conclusory assertions that Conn's failed to implement or oversee internal controls fall short of this standard. Therefore, to the extent Plaintiff attempts to assert a *Caremark* claim, it must be dismissed for failure to plead demand futility.

freely give leave [to amend] when justice so requires." FED. R. CIV. P. 15(a)(2). "Accordingly, district courts in the Fifth Circuit 'must entertain a presumption in favor of granting parties leave to amend.'" *In re BP P.L.C. Sec. Litig.*, No. 10-CV-4214, 2017 WL 914995, at \*2 (S.D. Tex. Mar. 8, 2017) (quoting *Mayeaux v. La. Health Serv. and Indem. Co.*, 376 F.3d 420, 425 (5th Cir. 2004)); *see Blackwell*, 440 F.3d at 291 (noting the "strong presumption" in favor of leave to amend). However, leave to amend is not automatic, and courts have discretion to deny leave in the face of "'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment.'" *Guitierrez v. Logan*, No. 02-CV-1812, 2005 WL 2121554, at \*13 (S.D. Tex. Aug. 31, 2005) (quoting *Wright v. Allstate Ins. Co.*, 415 F.3d 384, 391 (5th Cir. 2005)).

Defendants argue that one chance to amend is sufficient here, however, there is no rule that a plaintiff should only be given one opportunity to amend the pleadings. In fact, the Fifth Circuit has noted that "[i]n view of the consequences of dismissal on the complaint alone, and the pull to decide cases on the merits rather than on the sufficiency of pleadings, district courts often afford plaintiffs *at least* one opportunity to cure pleading deficiencies before dismissing a case." *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305,

329 (5th Cir. 2002) (emphasis added). Courts in the Fifth Circuit often grant plaintiffs multiple opportunities to amend where appropriate, even after having previously dismissed the complaint. *See, e.g.*, *Omega Hosp., LLC v. United Healthcare Servs., Inc.*, 389 F. Supp. 3d 412, 430 (M.D. La. 2019) (granting leave to amend for a second time, after granting defendants' second motion to dismiss in part); *Crowell v. Alamo Cmty. Coll. Dist.*, No. 03-CV-686, 2006 WL 509204, at *1-2 (W.D. Tex. Feb. 7, 2006) (granting leave to amend after the court had dismissed the complaint several times).[20]

Here, Plaintiff does not indicate *how* he would correct the deficiencies in the amended complaint. *See United States ex. rel. Adrian*, 363 F.3d at 404 (fifth circuit affirmed denial of leave to amend because plaintiff failed to indicate *how* he would correct the pleading deficiencies). Instead, Plaintiff argues that the plaintiffs in the Securities Class Action had multiple opportunities to amend. ECF No. 70 at 25. This argument does not support further amendment here and would seem to counsel against it since Plaintiff should have benefitted from the pleadings in that case.

---

[20] Defendants assert that the Fifth Circuit cautioned otherwise in *United States ex. rel. Adrian v. Regents of University of California*, 363 F.3d 398 (5th Cir. 2004), arguing that binding precedent from that case holds that "it is 'sufficient' to offer a plaintiff '[o]ne opportunity to amend, in the face of motions [(and in this case, the R&R)] that spelled out the asserted defects in the original pleadings.'" ECF No. 66 at 25 (quoting *Adrian*, 363 F.3d at 404); *see also* ECF No. 71 at 9. However, the quoted language is from the District Court's opinion, repeated by the Fifth Circuit as part of the case's procedural history, and was not the basis of its holding which rested on plaintiff's failure to show *how* he would correct the deficiencies in his previous complaints. *Adrian*, 363 F.3d at 404.

Plaintiff further argues that he could use new facts learned in on-going discovery to augment his demand futility allegations. ECF No. 70 at 25. Plaintiff's supposition that new facts may be learned to support demand-futility provides no basis for further leave to amend. *Blackwell*, 440 F.3d at 291 (plaintiffs' argument that additional facts "*might* become known" failed to provide a basis for leave to amend). Thus, although leave should be freely granted, Plaintiff has failed to provide the Court with briefing in support of further leave to amend.

During oral argument, Plaintiff articulated a new theory as to demand futility for his insider trading claims—namely that the insider trading claims are part of the breach of fiduciary duty claims. Allowing the Plaintiff to amend to assert this new theory would add to the breach of fiduciary duty claim that the Court already found sufficiently plead. Therefore, Plaintiff should be given an opportunity to reframe his breach of fiduciary duty allegations with additional evidence of those breaches.

The insider trading claim stands on different footing. Plaintiff's new theory raised for the first time during oral argument—that the three Directors who did not improperly trade their stock are nevertheless interested because they allowed others to do so—would add back in the claim that this Court finds is not sufficient based on only one current director engaging in insider trading. Plaintiff failed to brief this theory or provide the Court with any authority that such a theory is supported in the caselaw. And, having engaged in extensive discovery between the original and the

amended complaint, Plaintiff failed to point to any evidence that would support such an allegation or why those facts were unavailable. *See Blackwell*, 440 F.3d at 291-92. Accordingly, Plaintiff should not be allowed to amend to include any additional stand-alone claims based upon insider trading.

Finally, the amended complaint omits 95250 Canada LTEE ("Canada LTEE") as a named Plaintiff, despite the fact this case was consolidated with an action Canada LTEE filed on August 19, 2015. ECF No. 21. Canada LTEE is therefore not currently a party in this action. *See Paws Up Ranch, LLC v. Green*, No. 12-CV-1547, 2015 WL 4113113, at *3 (D. Nev. July 8, 2015); *cf. Bradley v. Marx Law Firm*, No. 17-CV-3317, 2018 WL 2441906, at *1 (N.D. Tex. May 31, 2018). Canada LTEE's counsel has appeared before the Court and indicated the company "remains willing to be a Plaintiff in the action." ECF No. 82 at 5:14-16. Plaintiff should be given the opportunity to correct this apparent oversight.

The Court, therefore, recommends Plaintiff's request for leave to amend be granted. *See, e.g.*, *Van der Gracht*, 2017 WL 9280071, at *23 (granting leave to amend after dismissal under 23.1); *Freuler*, 803 F. Supp. 2d at 652 (granting leave to amend after dismissal under Rule 23.1 because the court found no bad faith, undue delay, prejudice, or futility of amendment would result). Plaintiff's amendment, however, should be restricted to adding Canada LTEE to the suit and reframing his insider trading claims as part of his breach of fiduciary duty claims. Plaintiff should

file the second amended complaint within 30 days of the District Judge's ruling on this Report and Recommendation.

## V.    CONCLUSION

For the reasons stated above, the Court recommends Defendants' motion to dismiss the amended complaint, ECF Nos. 66 & 67, be DENIED as to Plaintiff's breach of fiduciary duty claims and GRANTED as to Plaintiff's insider trading claims. The Court also recommends Plaintiff's request for leave to amend be GRANTED only to the extent necessary to add Canada LTEE as a plaintiff and to further plead his breach of fiduciary duty claims with allegations regarding insider trading.

The Parties have fourteen days from service of this Report and Recommendation to file written objections. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). Failure to file timely objections will preclude review of factual findings or legal conclusions, except for plain error. *Quinn v. Guerrero*, 863 F.3d 353, 358 (5th Cir. 2017).

Signed at Houston, Texas, on July 22, 2020.

Dena Palermo
_____
**Dena Hanovice Palermo**
**United States Magistrate Judge**