UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

ROBERT HACK, derivatively on behalf of §
CONN'S, INC., §
§
§
Plaintiff, §
§
§
vs. §
§
§
THEODORE M. WRIGHT, BOB L. §
MARTIN, JON E.M. JACOBY, KELLY M. §   Civil Action No. 4:14-cv-3442 (KPE)
MALSON, DOUGLAS H. MARTIN, DAVID §
SCHOFMAN, SCOTT L. THOMPSON, §
BRIAN TAYLOR, and MICHAL J. POPPE, §
§
Defendants, §
§
- and - §
§
CONN'S, INC., a Delaware corporation, §
§
Nominal Defendant. §

**The Derivative Action Plaintiffs' Motion for Appeal Bond**

**Table of Contents**

I.      INTRODUCTION AND PROCEDURAL HISTORY....................................................... 1

II.     LEGAL STANDARD............................................................................................ 3

III.    ARGUMENT...................................................................................................... 4

        A.      The Court Should Require Dohn to Post an Appeal Bond Because
                His Appeal — Devoid of Appellate Standing and a Factual
                Basis — Is Utterly Without Merit.............................................................. 4

                1.      Dohn Lacks Standing to Appeal and His Refusal to
                        Conclusively Demonstrate Continuous Ownership
                        Raises Serious Questions ........................................................... 4

                2.      Dohn's Objection is Meritless Because It Relied on
                        False Assertions of Fact............................................................. 8

        B.      There Is a Substantial Risk That Dohn and His Counsel Would Not Pay
                Appellees' Costs When He Loses the Appeal ......................................... 11

        C.      The Court Should Require a Bond of $134,825 ..................................... 11

IV.     CONCLUSION................................................................................................... 14

## Table of Authorities

**Cases**

*Adsani v. Miller*,
139 F.3d 67 (2d Cir. 1998)...................................................................................... 14

*Edwards v. City of Houston*,
78 F.3d 983 (5th Cir. 1996) ..................................................................................... 4

*Ernest v. CitiMortgage, Inc.*,
2014 U.S. Dist. LEXIS 8559 (W.D. Tex. Jan. 22, 2014)........................................ 13

*Felzen v. Andreas*,
134 F.3d 873 (7th Cir. 1998) .................................................................................... 4

*Gemelas v. Dannon Co.*,
2010 U.S. Dist. LEXIS 99503 (N.D. Ohio Aug. 31, 2010) ....................... 11, 13, 14

*Heekin v. Anthem, Inc.*,
2013 U.S. Dist. LEXIS 26700 (S.D. Ind. Feb. 27, 2013) ....................................... 12

*Helix Energy Solutions Grp., Inc. v. Porter*,
440 S.W.3d 167 (Tex. Ct. App. 2013) ...................................................................... 5

*In re Capital One Derivative S'holder Litig.*,
952 F. Supp. 2d 770 (E.D. Va. 2013) ....................................................................... 5

*In re Cardizem CD Antitrust Litig.*,
391 F.3d 812 (6th Cir. 2004) ................................................................... 2, 3, 11, 12

*In re Compact Disc Minimum Advertised Price Antitrust Litig.*,
2003 U.S. Dist. LEXIS 25788 (D. Me. Oct. 7, 2003)............................................. 13

*In re Computer Scis. Corp. Derivative Litig.*,
2007 U.S. Dist. LEXIS 25414 (C.D. Cal. Mar. 27, 2007) ........................................ 5

*In re Countrywide Fin. Corp.*,
2010 U.S. Dist. LEXIS 131775 (W.D. Ky. Dec. 13, 2010)..................................... 12

*In re Currency Conversion Fee Antitrust Litig.*,
2010 U.S. Dist. LEXIS 27605 (S.D.N.Y. Mar. 5, 2010) ........................................ 13

*In re Initial Pub. Offering Sec. Litig.*,
728 F. Supp. 2d 289 (S.D.N.Y. 2010)..................................................................... 12

*In re Ins. Brokerage Antitrust Litig.*,
2007 U.S. Dist. LEXIS 47659 (D.N.J. July 2, 2007)........................................ 12, 13

*In re Polyurethane Foam Antitrust Litig.*,
178 F. Supp. 3d 635 (N.D. Ohio 2016)............................................... 2, 12, 13, 14

*In re Porsche Cars N. Am., Inc. Plastic Coolant Tubes Prods. Liab. Litig.*,
　2014 U.S. Dist. LEXIS 88693 (S.D. Ohio June 30, 2014) ................................................... 11

*In re Sagent Tech., Inc. Derivative Litig.*,
　278 F. Supp. 2d 1079 (N.D. Cal. 2003) .................................................................................. 5

*In re Super. Offshore Int'l, Inc. Sec. Litig.*,
　2011 U.S. Dist. LEXIS 89283 (S.D. Tex. Aug. 11, 2011) ..................................................... 13

*In re Wells Fargo Loan Processor Overtime Pay Litig.*,
　2011 U.S. Dist. LEXIS 84541 (N.D. Cal. Aug. 2, 2011) ....................................................... 13

*Jones v. Singing River Health Sys.*,
　2016 U.S. Dist. LEXIS 156692 (S.D. Miss. Aug. 23, 2016) ................................................... 3

*Karcher v. May*,
　484 U.S. 72 (1987) .................................................................................................................. 4

*Marino v. Ortiz*,
　484 U.S. 301 (1988) ................................................................................................................ 4

*Noatex Corp. v. King Constr. of Houston, L.L.C.*,
　732 F.3d 479 (5th Cir. 2013) .................................................................................................. 3

*Pedraza v. United Guar. Corp.*,
　313 F.3d 1323 (11th Cir. 2002) .............................................................................................. 3

*United States v. Franklin Parish Sch. Bd.*,
　47 F.3d 755 (5th Cir. 1995) .................................................................................................... 4

*United States ex rel. Louisiana v. Jack*,
　244 U.S. 397 (1917) ................................................................................................................ 4

*Vaughn v. Am. Honda Motor Co.*,
　507 F.3d 295 (5th Cir. 2007) ............................................................................................ 3, 11

*Young v. New Process Steel, LP*,
　419 F.3d 1201 (11th Cir. 2005) ............................................................................................ 14

**Statutes**

28 U.S.C. § 1920 ........................................................................................................................... 12

28 U.S.C. § 1927 ..................................................................................................................... 11, 13

8 DEL. CODE § 327 .......................................................................................................................... 4

**Rules**

FED. R. APP. P. 7 .......................................................................................................................... 2, 3

FED. R. APP. P. 38 ........................................................................................................................... 11

FED. R. APP. P. 39 ............................................................................................................ 1, 3, 12, 13

iii

Pursuant to Rule 7 and Rule 39 of the Federal Rules of Appellate Procedure, the Derivative Action Plaintiffs,[1] Robert Hack and 95250 Canada LTEE, respectfully move for an order requiring objector-appellant Richard A. Dohn ("Dohn"), a purported shareholder of nominal defendant-appellee Conn's, Inc. ("Conn's"), to post a $134,825 bond for the costs on appeal.

## I.     INTRODUCTION AND PROCEDURAL HISTORY

The Court should exercise its sound discretion to require Dohn to post an appeal bond because, as demonstrated below, he lacks standing to appeal, and his appeal — seeking to reargue baseless objections — is utterly without merit.

On December 13, 2021, the Court preliminarily approved the Settlement and directed that notice be sent to Conn's shareholders. Dkt. No. 179. As a result, Conn's caused the Court-approved notice to be published in *Investor's Business Daily* and posted to Conn's website. Dkt. No. 187. Only one purported Conn's stockholder — Dohn, who filed a copy-cat derivative complaint in state court back in 2014 and voluntarily stayed his case for eight years — objected to the Settlement. But Dohn failed to move to intervene in this case and thus remains a non-party.

On February 17, 2022, the Court held a Fairness Hearing. The Court considered the objection, heard argument, and subsequently issued an order for additional briefing and continuing the Fairness Hearing to March 15, 2022.

On March 15, 2022, after receiving and considering the supplemental submissions, including a brief and declaration from Dohn, the Court overruled his objection and granted final approval of the shareholder derivative settlement. Dkt. No. 199.

Requiring Dohn to post an appeal bond is warranted because, in addition to lacking

---

[1]   This motion adopts all defined terms in the November 24, 2021 Stipulation and Agreement of Settlement ("Stipulation"), which has been filed with this Court as Exhibit 1 to the Derivative Action Plaintiffs' Motion for Preliminary Approval of the Settlement. Dkt. No. 177-1.

standing to appeal, Dohn's objection was based on demonstrably wrong assertions of facts, and he lacks standing to pursue any derivative action due to a lack of continuous ownership of Conn's stock. Federal Rule of Appellate Procedure 7 authorizes district courts to "require an appellant [in any civil case] to file a bond or provide other security in any form and amount necessary to ensure payment of costs on appeal." FED. R. APP. P. 7. These costs have been held to include "the preparation and transmission of the record [and] the reporter's transcript [and] [f]ees of the clerk and marshal," as well as "administrative costs" and "attorney's fees." *In re Cardizem CD Antitrust Litig.*, 391 F.3d 812, 813–18 (6th Cir. 2004) (affirming "order of the district court imposing the appeal bond" "in the amount of $174,429").

"When faced with a motion requesting an appeal bond, a district court must determine (a) whether a bond is appropriate, and (b) if so, how much the bond should be." *In re Polyurethane Foam Antitrust Litig.*, 178 F. Supp. 3d 635, 638 (N.D. Ohio 2016) (imposing bond in part because objectors had a history of filing frivolous appeals designed to delay the distribution of class action settlement proceeds). "Regarding the first question, 'courts typically consider (1) the appellant's financial ability to post a bond, (2) the risk that the appellant would not pay appellee's costs if the appeal is unsuccessful, (3) the merits of the appeal, and (4) whether the appellant has shown any bad faith or vexatious conduct.'" *Id*. (citation omitted).

Here, each of the above factors warrants the posting of an appeal bond in the amount of $134,825, as the appeal is being pursued by a shareholder who has failed to acquire standing to appeal through intervention, and who lacks the ability to pursue any derivative action due to a lack of continuous ownership.

Accordingly, the Court should grant this motion and order Dohn to post a bond for the cost of the appeal, including reasonable attorneys' fees.

## II.     LEGAL STANDARD

Rule 7 of the Federal Rules of Appellate Procedure provides that "[i]n a civil case, the district court may require an appellant to file a bond or provide other security in any form and amount necessary to ensure payment of costs on appeal." FED. R. APP. P. 7.  Rule 39(c) provides for the taxation of copying costs by the court of appeals, while subsection (e) provides that the following costs are taxable on appeal by the district court:

(1)     the preparation and transmission of the record;
(2)     the reporter's transcript, if needed to determine the appeal;
(3)     premiums paid for a supersedeas bond or other bond to preserve rights pending appeal; and
(4)     the fee for filing the notice of appeal.

FED. R. APP. P. 39.  As recognized by district courts in the Fifth Circuit, "courts have held that attorneys' fees may also be included in the bond[.]" *Jones v. Singing River Health Sys.*, 2016 U.S. Dist. LEXIS 156692, at \*\*5–7 (S.D. Miss. Aug. 23, 2016) (citing *Cardizem*, 391 F.3d at 817, and *Pedraza v. United Guar. Corp.*, 313 F.3d 1323, 1333 (11th Cir. 2002)).  In *Noatex Corp. v. King Constr. of Houston, L.L.C.*, the Fifth Circuit "assum[ed] without deciding that attorney's fees may constitute costs for Rule 7 purposes." *See* 732 F.3d 479, 489 n.8 (5th Cir. 2013).[2]

In assessing a Rule 7 motion, the relevant factors are: "(1) whether there is a risk of non-payment in the event that the appellants lose their appeal, (2) any previous bad faith or vexatious conduct on part of the appellants, and (3) the likely merits of the appeal." *Id.* at 489 (citing cases).

Tested under these factors, Dohn's appeal requires posting of an appeal bond.

---

[2] *See also Vaughn v. Am. Honda Motor Co.*, 507 F.3d 295, 299 (5th Cir. 2007) (recognizing the circuit split regarding, but declining to decide, "whether a district court has the power to award attorneys' fees as costs pursuant to Rules 7 and 39(e)").

3

### III.   ARGUMENT

**A.   The Court Should Require Dohn to Post an Appeal Bond Because His Appeal —
Devoid of Appellate Standing and a Factual Basis — Is Utterly Without Merit**

    **1.   Dohn Lacks Standing to Appeal and His Refusal to Conclusively
Demonstrate Continuous Ownership Raises Serious Questions**

Because Dohn has failed to intervene in this action, he lacks standing to appeal.  "It is well-settled that one who is not a party to a lawsuit, or has not properly become a party, has no right to appeal a judgment entered in that suit." *Edwards v. City of Houston*, 78 F.3d 983, 993 (5th Cir. 1996) (citing *Marino v. Ortiz*, 484 U.S. 301 (1988), *Karcher v. May*, 484 U.S. 72, 77 (1987), and *United States ex rel. Louisiana v. Jack*, 244 U.S. 397 (1917)).  Under this settled rule, a shareholder who is a non-party to a derivative action must intervene in the action in order to acquire standing to appeal any judgment from that action. *Felzen v. Andreas*, 134 F.3d 873, 876–77 (7th Cir. 1998) (dismissing appeal for want of jurisdiction).  Dohn's failure to intervene in this action is fatal to his standing to appeal. *See id*.; *see also*, *e.g*., *United States v. Franklin Parish Sch. Bd*., 47 F.3d 755, 758 (5th Cir. 1995) (dismissing appeal for "lack of appellate jurisdiction" because the appellant failed to successfully intervene in the district court).

There is another serious issue with Dohn's standing as a shareholder plaintiff in a derivative action.  Dohn's objection to the settlement was solely predicated on his supposed desire to return to state court and litigate a derivative action that he had agreed to stay for more than seven years.  To accomplish that, however, Dohn is required to demonstrate "continuous ownership" of Conn's stock at all times since 2014. *See* 8 DEL. CODE § 327 ("[i]n any derivative suit instituted by a stockholder of a corporation, it shall be averred in the complaint that the plaintiff was a stockholder of the corporation at the time of the transaction of which such stockholder complains"); *see also*, *e.g*., *In re Sagent Tech., Inc. Derivative Litig*., 278 F. Supp. 2d 1079, 1096 (N.D. Cal. 2003) ("the complaint must indicate when plaintiffs bought stock in [the company], and must state that they

have owned stock continuously"); *In re Capital One Derivative S'holder Litig.*, 952 F. Supp. 2d 770, 795 (E.D. Va. 2013) (finding insufficient the allegation that plaintiffs were stockholders "at all relevant times"); *In re Computer Scis. Corp. Derivative Litig.*, 2007 U.S. Dist. LEXIS 25414, at **48–49 (C.D. Cal. Mar. 27, 2007) (same); *Helix Energy Solutions Grp., Inc. v. Porter*, 440 S.W.3d 167, 178–79 (Tex. Ct. App. 2013) (same).

But Dohn has not shown he meets this continuous-ownership requirement; indeed the documents Dohn's counsel submitted to this Court are incomplete and raise more questions than they answer. Dohn submitted documents in connection with his objection that demonstrate he sold all or most of the Conn's stock he held in 2015, and that he only currently owns 10 shares of Conn's stock. *See* Dkt. No. 183-1 at 3, 5. During the settlement-approval proceedings before this Court, Dohn failed to demonstrate when he bought those 10 shares despite having been challenged repeatedly to do so. There are two possibilities here: either Dohn retained 10 of the shares he originally purchased (in which event he would meet the continuous ownership requirement), or he sold all original shares and *later* purchased 10 new shares (in which event he would not meet that requirement).

It would have been a simple thing for Dohn to show that he had in fact held his current 10 shares since 2012 or 2013 (when he made his initial purchases). The TD Ameritrade account statements Dohn's counsel used to demonstrate his client's ownership have a column entitled "Purchase Date" that shows the date on which the shares were purchased. A sample page from TD Ameritrade's online "Quick Reference Guide" shows the layout of its accounts statements (*see* below).[3] The "Purchase Date" column is just to the right of the "Market Value" column:

---

[3] TD Ameritrade, Your Quick Reference Guide to Reading Your Statement, at 3, *available at* https://www.tdameritrade.com/retail-en_us/resources/pdf/TDA7962.pdf (last visited May 16, 2022).

**Statement for Account # XXX-XXXXXX**
MM/DD/YY - MM/DD/YY

| Online Cash Services Summary | | |
|---|---|---|
| **Description** | **Current** | **Year To Date** |
| **CREDITS** | | |
| Electronic Transfer | $  9,260.00 | $  24,170.89 |
| *Subtotal* | 9,260.00 | 24,170.89 |
| **DEBITS** | | |
| Electronic Transfer | $  (306.70) | $  (306.70) |
| *Subtotal* | (306.70) | (306.70) |
| **TOTAL** | **8,953.30** | **23,864.19** |

| Income Summary Detail* | | |
|---|---|---|
| **Description** | **Current** | **Year to Date** |
| Ordinary Dividends | $ 49.04 | $ 97.04 |
| Margin Interest Charged | (0.05) | (0.07) |
| Qualified Dividends | 578.81 | 2,145.87 |
| IDA Interest | 0.00 | 0.02 |

*This section displays current and year to date taxation values for this account. The current totals may not equate to the total payments listed on this statement as corrections to tax reporting may also be included. These corrections can include changes made to previous payments and removal of payments reportable in a previous tax year (spillover dividends). The year to date totals will accurately reflect your cumulative amount for the year.

| Account Positions | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| **Investment Description** | **Symbol/ CUSIP** | **Quantity** | **Current Price** | **Market Value** | **Purchase Date** | **Cost Basis** | **Average Cost** | **Unrealized Gain(Loss)** | **Estimated Income** | **Yield** |
| **Stocks - Margin** | | | | | | | | | | |
| APPLE INC COM | AAPL | 145.915 | $ 169.04 | $ 24,665.47 | 06/10/14 | $ 15,992.18 | $ 109.60 | $ 8,673.29 | $ 367.71 | 1.5% |
| AT&T INC COM | T | 51.274 | 33.65 | 1,725.37 | 03/16/17 | 2,186.26 | 42.64 | (460.89) | 100.50 | 5.8% |
| BANK OF AMERICA CORP COM | BAC | 1,567.502 | 27.39 | 42,933.88 | 11/16/11 | 18,168.33 | 11.59 | 24,765.55 | 752.40 | 1.8% |
| BLINK CHARGING CO COM | CCGI | 60 | 8.00 | 480.00 | 06/07/16 | 1,029.48 | 17.16 | (549.48) | - | - |
| CANOPY GROWTH CORP COM | TWMJF | 100 | 12.57 | 1,257.00 | 02/17/17 | 974.99 | 9.75 | 282.01 | - | - |
| FACEBOOK INC COM | FB | 100 | 180.06 | 18,006.00 | 02/01/13 | 4,580.97 | 45.81 | 13,425.03 | - | - |

Dohn could have cleared up the question simply by showing the "Date Purchased" column in his submission to the Court. But that column was excised from the exhibit provided by Dohn's counsel. In other words, Dohn concealed that information from the account statements he submitted to the Court by cutting off the columns on his TD Ameritrade account statements that show the date of his purchase of those 10 shares:

[The remainder of this page is deliberately left blank.]

6



Case 4:14-cv-03442   Document 183-1   Filed on 01/27/22 in TXSD   Page 3 of 8



In sum, Dohn has failed to demonstrate the continuous ownership of Conn's stock that is required to maintain a derivative action, even though showing his purchase date would have been very simple.  *See* Dkt. No. 185 at 13–14.

### 2.   Dohn's Objection is Meritless Because It Relied on False Assertions of Fact

The substance of Dohn's objection relied entirely on a false factual predicate, *i.e.*, that "Stephens" holds a "controlling interest" in Conn's and thus the Conn's Board that voted to approve the settlement was not independent.  There are several problems with Dohn's evidence-free assertion, which runs counter to publicly available (and judicially noticeable) SEC filings.

In his March 1, 2022 submission, for example. Dohn stated:

> Stephens, Inc. and Stephens Group (collectively referred to as "Stephens") have a controlling interest in the Board. (Dkt. No. 192 pp. 3–4).  Named Defendants Douglas Martin and Bob Martin remain on the Board and are employed and controlled by the Company's principal shareholder — Stephens.  *Id*.  Despite six of the nine members joining the Board after the alleged misconduct, Conn's admits in its SEC filings that it remains beholden to D. Martin and B. Martin.  ...  Here, the [Derivative Action] Plaintiffs and Defendants failed to implement any safeguards despite the controlling interest held by Stephens through the two of the three named Defendants who remain on the Board, D. Martin and B. Martin.

Dkt. No. 197 at 4.  Three of Dohn's statements are false.

First, Dohn is wrong to assert that two separate entities — Stephens Inc. and The Stephens Group, LLC ("Stephens Group") — have a single, unified "controlling interest."  Stephens Inc. and Stephens Group are owned and controlled *by different individuals*.  As demonstrated by SEC filings, these two entities do not operate as a "group" within the meaning of Section 13(d) of the Securities and Exchange Act of 1934.  They file separate Schedule 13Ds.[4]  They are listed

---

[4] *See*, *e.g.*, Jan. 28, 2022 Schedule 13D of The Stephens Group, LLC, *available at* https://ir.conns.com/static-files/f35ef779-97f3-43c3-bc63-add5bf097e24 (last visited May 16, 2022); Dec. 6, 2021 Schedule 13D/A of Stephens Investment Holdings LLC (which included Stephens Inc.), *available at* https://ir.conns.com/static-files/a21614f7-f576-470c-b7cb-cfce76b8b26e (last visited May 16, 2022).

separately, not as a single group, in Conn's Proxy Statements:

| Name | Shares of Common Stock Beneficially Owned | Percent of Common Stock |
|---|---|---|
| Warren A. Stephens (1) | 4,957,863 | 20.84% |
| The Stephens Group, LLC and its affiliates (2) | 4,305,343 | 18.10% |
| BlackRock, Inc. (3) | 3,987,698 | 16.76% |
| Dimensional Fund Advisors LP (4) | 2,069,195 | 8.70% |
| Norman L. Miller | 574,078 | 2.41% |
| Chandra R. Holt | 259,313 | 1.09% |
| Douglas H. Martin (5) | 172,447 | * |
| Bob L. Martin | 126,238 | * |
| George L. Bchara | 94,765 | * |
| Rodney Lastinger | 73,511 | * |
| Mark L. Prior | 68,515 | * |
| William A. Saunders, Jr. | 63,022 | * |
| William (David) Schofman | 50,254 | * |
| Oded Shein | 43,187 | * |
| James H. Haworth | 35,035 | * |
| Sue E. Gove | 19,279 | * |
| **All Directors and Executive Officers, as a group (12 persons)** | 1,579,644 | 6.64% |

*See*, *e.g.*, Apr. 13, 2022 Schedule 14A of Conn's, Inc., at 44, *available at* https://ir.conns.com/static-files/9693d99c-a467-4664-ad8c-7c04e60c6428 (last visited May 16, 2022). These facts are verifiable through public sources.

Second, Dohn is wrong to assert that Douglas Martin and Bob Martin "are employed and controlled by the Company's principal shareholder — Stephens."[5] Douglas Martin is employed as a Senior Managing Director of Stephens, Inc., but has no connection to Stephens Group. Bob Martin has an ongoing relationship with Stephens Group, but is not an employee. He has no relationship with Stephens Inc. The board of Conn's has repeatedly determined, with the advice of competent counsel, that Bob Martin is "independent" of Stephens Group.[6]

---

[5] It is undisputed that Douglas Martin and Bob Martin are not related.

[6] Conn's 2021 Proxy Statement contained the following disclosure:

> At the meeting of the Nominating and Corporate Governance Committee held in March 2021, the Committee discussed the relationships of Mr. Bob Martin with The Stephens Group, LLC, and whether his relationship or ownership interest impacted his ability to exercise independent judgment in carrying out his responsibility as a director. The Committee discussed the current position of Mr. Bob Martin with The Stephens Group, LLC, and the fact that the position is not substantively different from the consulting

Third, Dohn's assertion that "Conn's admits in its SEC filings that it remains beholden to D. Martin and B. Martin" is completely false and borders on deliberate deception.  The language from Conn's 2021 Form 10-K that Dohn excerpted stated that "[a] large proportion of our outstanding common stock is beneficially owned by a small group of principal stockholders and their affiliates, including Stephens Inc., Stephens Group, BlackRock, Inc. and Dimensional Fund Advisors LP."[7]

The obvious thrust of the 10-K language is to alert investors that four shareholders hold large blocks of shares – not to suggest that the four are related or act as a group.

It was deceptive for Dohn to alter the language and meaning by removing the references to BlackRock and Dimensional, holders of nearly 18% of Conn's outstanding stock[8] — neither of which is affiliated with either Stephens, Inc. or Stephens Group — and then use the altered sentence to support the assertion that "Stephens" is the controller.

All told, Dohn's appeal is based on factual misstatements.  And, despite his lack of standing

---

work that Mr. Bob Martin has done in previous years for The Stephens Group, LLC, the continuous exercise of independent judgment by Mr. Bob Martin since his election to our Board in 2003, and his lack of control of voting of Common Stock owned by The Stephens Group, LLC or any of its affiliates, including SG-1890 LLC. The Committee has determined that Mr. Martin is properly considered an independent director and recommended to the Board of Directors that it approve Mr. Bob Martin's independence as defined under the SEC and the NASDAQ rules.

At its meeting in March 2021, our Board of Directors approved the independence of Mr. Bob Martin.

Apr. 13, 2022 Schedule 14A of Conn's, Inc., at 14, *available at* https://ir.conns.com/static-files/9693d99c-a467-4664-ad8c-7c04e60c6428 (last visited May 16, 2022).

[7] *See* Mar. 29, 2022 Form 10-K of Conn's, Inc., at 30, *available at* https://ir.conns.com/static-files/be967441-21af-4b46-8b4b-f1682bafa53b (last visited May 16, 2022).

[8] *See* Conn's Aug. 9, 2021 Proxy Statement, *available at* https://ir.conns.com/static-files/8452bbaf-0431-4fe6-8a61-dcd4b89b02dc (last visited May 3, 2022).

to appeal, Dohn is pursuing an appeal to attack the fairness and adequacy of the settlement. Dohn's appeal is without merit and gives rise to liability for unreasonably multiplying proceedings under 28 U.S.C. § 1927 and pursuing a frivolous appeal under Rule 38 of the Federal Rules of Appellate Procedure.[9]

**B.     There Is a Substantial Risk That Dohn and His Counsel Would Not Pay Appellees' Costs When He Loses the Appeal**

Dohn's account statement submitted with his objection indicates he lives in Alpharetta, Georgia. *See* Dkt. No. 183-1. Similarly, his counsel Federman & Sherwood reside outside this district, in Oklahoma. The fact that Dohn and his counsel reside outside of the Fifth Circuit weighs in favor of the issuance of a bond. *In re Porsche Cars N. Am., Inc. Plastic Coolant Tubes Prods. Liab. Litig.*, 2014 U.S. Dist. LEXIS 88693, at *16 (S.D. Ohio June 30, 2014) ("The fact that [objector] resides in Idaho — outside the jurisdiction of the Sixth Circuit and this Court — is further support for the conclusion that [objector] may not pay the appeal costs if her appeal is unsuccessful.").

**C.     The Court Should Require a Bond of $134,825**

"The district court's decision to impose a bond and to determine its amount lies within the district court's discretion." *Gemelas v. Dannon Co.*, 2010 U.S. Dist. LEXIS 99503, at *3 (N.D. Ohio Aug. 31, 2010) (citing *Cardizem*, 391 F.3d at 818). The burden is on the appellant to establish that the bond would constitute a barrier to appeal. *Porsche*, 2014 U.S. Dist. LEXIS 88693, at *15. Here, nothing in the record suggests that Dohn — who claims to be a sophisticated investor — does not have the ability to post the requested bond.

---

[9] To be clear, the Derivative Action Plaintiffs do not seek a finding from this Court that Dohn's appeal is frivolous under Rule 38. As held in *Vaughn*, a finding of frivolity under Rule 38 can only be made by the Court of Appeals. *See* 507 F.3d at 299.

When faced with an appeal by objectors, many courts have imposed significant appeal bonds to ensure that the appeal process is not misused. *See*, *e.g.*, *Cardizem*, 391 F.3d at 816–17 (upholding $174,429 appeal bond against objector and dismissing objector's appeal after she failed to post the bond); *Polyurethane*, 178 F. Supp. 3d at 645 (imposing $145,463 bond against objectors to a class action settlement and fee award); *Heekin v. Anthem, Inc*., 2013 U.S. Dist. LEXIS 26700, at **111–12 (S.D. Ind. Feb. 27, 2013) (imposing $250,000 bond on each of two objectors to a class action).

The Derivative Action Plaintiffs propose a bond amount of $134,825, which includes estimated costs associated with the appeal ($25,000) and attorneys' fees ($109,825) based on the appeal's patently meritless nature.

Rule 39(e) provides for certain costs to be included in appeal bonds: "(1) the preparation and transmission of the record; (2) the reporter's transcript, if needed to determine the appeal; (3) premiums paid for a supersedeas bond or other bond to preserve rights pending appeal; and (4) the fee for filing the notice of appeal." In addition, "'[t]he costs taxable under [Section] 1920 include the marshal and clerk fees, court reporter fees, printing and witness fees, copying fees, docket fees, and compensation of court appointed experts and interpreters.'" *In re Countrywide Fin. Corp.*, 2010 U.S. Dist. LEXIS 131775, at *16 (W.D. Ky. Dec. 13, 2010) (citation omitted).

Rule 7 does not require appellees to make an exact "showing of costs for a bond motion." *In re Ins. Brokerage Antitrust Litig*., 2007 U.S. Dist. LEXIS 47659, at *42 (D.N.J. July 2, 2007). District courts regularly impose between $20,000 and $50,000 for costs in connection with appeals involving similar issues. *See In re Initial Pub. Offering Sec. Litig*., 728 F. Supp. 2d 289, 295 (S.D.N.Y. 2010) (imposing a $25,000 appeal bond jointly and severally on objectors to cover Rule 39(e) costs); *Ins. Brokerage*, 2007 U.S. Dist. LEXIS 47659, at *43 (imposing a "reasonable"

12

$25,000 appeal bond for objectors to class settlement); *In re Wells Fargo Loan Processor Overtime Pay Litig.*, 2011 U.S. Dist. LEXIS 84541, at *29 (N.D. Cal. Aug. 2, 2011) ($20,000 bond imposed on single objector to cover Rule 39(e) costs); *In re Compact Disc Minimum Advertised Price Antitrust Litig.*, 2003 U.S. Dist. LEXIS 25788, at *2 (D. Me. Oct. 7, 2003) ($35,000 appeal bond); *In re Currency Conversion Fee Antitrust Litig.*, 2010 U.S. Dist. LEXIS 27605, at *9 (S.D.N.Y. Mar. 5, 2010) ($50,000 appeal bond). Here, the Derivative Action Plaintiffs request that Dohn be required to post $25,000 to guarantee their costs of photocopying, serving, preparing, and transmitting the record for the appeal. *See In re Super. Offshore Int'l, Inc. Sec. Litig.*, 2011 U.S. Dist. LEXIS 89283, at **5–6 (S.D. Tex. Aug. 11, 2011).

In addition, the Derivative Action Plaintiffs request a bond that covers their attorneys' fees on appeal in light of the fact that Dohn lacks standing to appeal, and that his appeal is utterly without merit. In *Ernest v. CitiMortgage, Inc.*, for example, the Western District of Texas required an appellant to post a bond for attorneys' fees due to "the very low likelihood of success on appeal." *See* 2014 U.S. Dist. LEXIS 8559, at *23 (W.D. Tex. Jan. 22, 2014). The Western District of Texas did so even without an explicit finding of bad faith in pursuing the appeal. *See id.*

In any event, ample facts — Dohn's lack of standing to appeal, his lack of derivative standing to pursue derivative claims in state court, and the false factual predicates in his objections to the settlement — support a finding that his appeal is taken in bad faith and constitutes an unreasonable multiplication of proceedings. *See* 28 U.S.C. § 1927. Where, as here, "an appeal is taken in bad faith, a district court may also exercise its discretion to impose a bond amount for attorneys' fees likely to be incurred on appeal." *Gemelas*, 2010 U.S. Dist. LEXIS 99503, at *4; *Polyurethane*, 178 F. Supp. 3d at 644 ("[I]t is within this Court's discretion to 'include attorneys' fees in an appellate bond pursuant to its inherent power to manage its affairs.'") (citation omitted).

13

In *Gemelas*, the court ordered a purported class member who routinely filed form objections to class settlements to pay a $275,000 appeal bond that included attorneys' fees. The court found that it was appropriate to include attorneys' fees in the bond because, *inter alia*, the appeal was "unreasonable and groundless" and to discourage serial objectors from holding up settlements. *Gemelas*, 2010 U.S. Dist. LEXIS 99503, at \*\*7–8; *see also Adsani v. Miller*, 139 F.3d 67, 75, 79 (2d Cir. 1998) (finding the imposition of a "cost bond" with attorneys' fees is proper where the appeal is "objectively unreasonable"); *Young v. New Process Steel, LP*, 419 F.3d 1201, 1206 (11th Cir. 2005) (holding that appeal bond should include anticipated attorneys' fees "where the appeal is likely to be frivolous, unreasonable, or without foundation"); *Polyurethane*, 178 F. Supp. 3d at 644–645 (imposing $90,000 for attorneys' fees as "necessary and appropriate" in appeal by serial objectors who "have shown some degree of bad faith or vexatious conduct").

The accompanying Declaration of Francis A. Bottini, Jr. establishes that a conservative estimate of the value of Lead Counsel's time to be spent in opposing the objectors' appeal will be approximately $109,825. *See* Declaration of Francis A. Bottini, Jr. ¶ 7. Based on Dohn's unreasonable, vexatious conduct in bringing this meritless appeal, it is appropriate to require the posting of a bond that includes $109,825 in anticipated attorneys' fees.

## IV.    CONCLUSION

For the above stated reasons, an appeal bond in the amount of $134,825 should be required.

Dated:  May 17, 2022

Respectfully submitted,

SPONSEL MILLER GREENBERG PLLC

*/s/ Roger B. Greenberg*
Roger B. Greenberg
   Texas Bar No. 08390000
   Federal ID No. 3932
Thane T. Sponsel III
   Texas Bar No. 24056361
   Federal ID No. 690068

14

50 Briar Hollow Lane
Suite 370 West
Houston, Texas 77027
Telephone: 713.892.5400
Email: roger@smglawgroup.com
Email: sponsel@smglawgroup.com

Francis A. Bottini, Jr.
James D. Baskin
    Texas Bar No. 01872050
Albert Y. Chang
Yury A. Kolesnikov
BOTTINI & BOTTINI, INC.
7817 Ivanhoe Avenue, Suite 102
La Jolla, California 92037
Telephone: 858.914.2001
Email: fbottini@bottinilaw.com
Email: jbaskin@bottinilaw.com
Email: achang@bottinilaw.com
Email: ykolesnikov@bottinilaw.com

Kip B. Shuman
SHUMAN, GLENN & STECKER
100 Pine Street, Suite 1250
San Francisco, CA 94111
Telephone: 303.861.3003
Email: kip@shumanlawfirm.com

Rusty E. Glenn
SHUMAN, GLENN & STECKER
600 17th Street, Suite 2800 South
Denver, CO 80202
Telephone: 303.861.3003
Email: rusty@shumanlawfirm.com

*Counsel for Plaintiffs Robert Hack and
95250 Canada LTEE*

15

## CERTIFICATE OF SERVICE

I hereby certify that on May 17, 2022, a true and correct copy of the foregoing document

was served on the following counsel of record via the Court's CM/ECF system:

Marisa Secco Giles, Esq.
Vinson & Elkins L.L.P.
2801 Via Fortuna, Suite 100
Austin, TX 78746
mgiles@velaw.com

Michael C. Holmes, Esq.
Lindsey Pryor, Esq.
Vinson & Elkins L.L.P.
2001 Ross Avenue, Suite 3700
Dallas, Texas 75201
mholmes@velaw.com
lpryor@velaw.com

*Counsel for Individual Defendants Theodore M. Wright,*
*Bob L. Martin, Jon E.M. Jacoby, Kelly M. Malson,*
*Douglas H. Martin, David Schofman, Scott L. Thompson,*
*Brian Taylor, and Michael J. Poppe*

N. Scott Fletcher, Esq.
Kenneth P. Held, Esq.
Fletcher Held, PLLC
808 Travis Street, Suite 1420
Houston, Texas 77002
sfletcher@fletcherheld.com
kheld@fletcherheld.com

*Counsel for Nominal Defendant Conn's, Inc.*

William B. Federman, Esq.
FEDERMAN & SHERWOOD
10205 N. Pennsylvania Avenue
Oklahoma City, Oklahoma 73120
WBF@federmanlaw.com

*Counsel for Objector Richard A. Dohn*

                                    *s/ Roger B. Greenberg*
                                    Roger B. Greenberg

16